# EXHIBIT A

 CT Corporation

**Service of Process Transmittal**
11/28/2017
CT Log Number 532375837

TO: Myrna Goodrich, Paralegal
Aetna, Inc.
Law U23S, 1425 Union Meeting Road
Blue Bell, PA 19422

RE: **Process Served in Connecticut**

FOR: Aetna Inc.  (Domestic State: PA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | COUNTY OF ESSEX, etc., Pltf. vs. AETNA INC, et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Attachment(s) |
| **COURT/AGENCY:** | ESSEX COUNTY - SUPERIOR COURT - LAW DIVISION, NJ<br>Case # ESXL782317 |
| **NATURE OF ACTION:** | Employee Litigation - Medical Claim Benefit |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, East Hartford, CT |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 11/28/2017 at 13:46 |
| **JURISDICTION SERVED :** | Connecticut |
| **APPEARANCE OR ANSWER DUE:** | Within 35 days after receipt, not counting the day of receipt |
| **ATTORNEY(S) / SENDER(S):** | Thomas A. Abbate<br>Decotiis, Fitzpatrick, Cole & Giblin, LLP<br>Glenpoint Center West<br>500 Frank W. Burr Boulevard<br>Teaneck, NJ 07666<br>201-928-1100 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 11/29/2017, Expected Purge Date: 12/04/2017<br><br>Image SOP<br><br>Email Notification,  Desiree Beatty  beattyd@aetna.com<br><br>Email Notification,  Jacqueline West  WestJ2@AETNA.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 67 Burnside Ave<br>East Hartford, CT 06108 |
| **TELEPHONE:** | 302-658-7581/7582/7583 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

| | |
|---|---|
| Attorney(s)  Thomas A. Abbate, Esq. | **Superior Court of** |
| Office Address  Glenpointe Centre West | **New Jersey** |
| 500 W. Burr Boulevard | |
| Town, State, Zip Code  Teaneck, NJ 07666 | |
| Telephone Number  (201) 928-1100 | Essex          COUNTY |
| Attorney(s) for Plaintiff  County of Essex | Law          DIVISION |

COUNTY OF ESSEX, et al.

Docket No: ESX-L-7823-17

Plaintiff(s)

Vs.

**CIVIL ACTION
SUMMONS**

AETNA, INC., AETNA LIFE INSURANCE, INC.,

ABC CORPS. 1-100 and JOHN DOES 1-100

Defendant(s)

From The State of New Jersey To The Defendant(s) Named Above:

   The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135 and completed Case Information Statement) if you want the court to hear your defense.

   If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

   If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

Dated: _____

Jennifer M. Perez,
Acting Clerk of the Superior Court

Name of Defendant to Be Served:  AETNA INC.

Address of Defendant to Be Served:  151 Farmington Avenue, Hartford, Connecticut 06105

NOTE: The Case Information Statement is available at http://www.njcourtsonline.com

Revised 7/1/2008, CN 10792                                                                    page 1 of 4

## DIRECTORY OF SUPERIOR COURT DEPUTY CLERK'S OFFICES
## COUNTY LAWYER REFERRAL AND LEGAL SERVICES OFFICES

**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Fl.
Atlantic City, NJ 08401

LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Room 115
Justice Center, 10 Main St.
Hackensack, NJ 07601

LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Fl., Courts Facility
49 Rancocas Rd.
Mt. Holly, NJ 08060

LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(800) 496-4570

**CAMDEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Processing Office
Hall of Justice
1st Fl., Suite 150
101 South 5th Street
Camden, NJ 08103

LAWYER REFERRAL
(856) 964-4520
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
9 N. Main Street
Cape May Court House, NJ 08210

LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
60 West Broad Street
P.O. Box 10
Bridgeton, NJ 08302

LAWYER REFERRAL
(856) 692-6207
LEGAL SERVICES
(856) 451-0003

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court
Civil Customer Service
Hall of Records, Room 201
465 Dr. Martin Luther King Jr. Blvd.
Newark, NJ 07102

LAWYER REFERRAL
(973) 622-6204
LEGAL SERVICES
(973) 624-4500

**GLOUCESTER COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake
First Fl., Court House
1 North Broad Street
Woodbury, NJ 08096

LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

**HUDSON COUNTY:**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept.
Brennan Court House--1st Floor
583 Newark Ave.
Jersey City, NJ 07306

LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822

LAWYER REFERRAL
(908) 735-2611
LEGAL SERVICES
(908) 782-7979

**MERCER COUNTY:**
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 S. Broad Street, P.O. Box 8068
Trenton, NJ 08650

LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY:**
Deputy Clerk of the Superior Court,
Middlesex Vicinage
2nd Floor - Tower
56 Paterson Street, P.O. Box 2633
New Brunswick, NJ 08903-2633

LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

**MONMOUTH COUNTY:**
Deputy Clerk of the Superior Court
Court House
P.O. Box 1269
Freehold, NJ 07728-1269

LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

**MORRIS COUNTY:**
Morris County Courthouse
Civil Division
Washington and Court Streets
P. O. Box 910
Morristown, NJ 07963-0910

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

**OCEAN COUNTY:**
Deputy Clerk of the Superior Court
118 Washington Street, Room 121
P.O. Box 2191
Toms River, NJ 08754-2191

LAWYER REFERRAL
(732) 240-3666
LBGAL SERVICES
(732) 341-2727

Revised 7/1/2008, CN 10792
Revised 07/2009, CN 10153-English (Directory of Superior Court Deputy Clerk's Offices County Lawyer Referral and Legal Services)

page 3 of 4

**PASSAIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton Street
Paterson, NJ 07505

LAWYER REFERRAL
(973) 278-9223
LEGAL SERVICES
(973) 523-2900

**SALEM COUNTY:**
Deputy Clerk of the Superior Court
Attn: Civil Case Management Office
92 Market Street
Salem, NJ 08079

LAWYER REFERRAL
(856) 678-8363
LEGAL SERVICES
(856) 451-0003

**SOMERSET COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
P.O. Box 3000
40 North Bridge Street
Somerville, N.J. 08876

LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY:**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 383-7400

**UNION COUNTY:**
Deputy Clerk of the Superior Court
1st Fl., Court House
2 Broad Street
Elizabeth, NJ 07207-6073

LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

**WARREN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
Court House
413 Second Street
Belvidere, NJ 07823-1500

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(908) 475-2010

Thomas A. Abbate (Attorney ID #015552002)
DECOTIIS, FITZPATRICK, COLE & GIBLIN, LLP
Glenpoint Centre West
500 Frank W. Burr Boulevard
Teaneck, New Jersey 07666
(201) 928-1100

Attorneys for Plaintiffs, County of Essex and
the Essex County Board of Chosen Freeholders

SUPERIOR COURT OF N.J.
CIVIL DIVISION
ESSEX VICINAGE

2017 NOV -6  P 2: 30

FINANCE DIVISION
ESSEX VICINAGE

---

| | |
|---|---|
| COUNTY OF ESSEX, a public entity of the State of New Jersey, and THE ESSEX COUNTY BOARD OF CHOSEN FREEHOLDERS, a body corporate and politic of the State of New Jersey,<br><br>Plaintiffs,<br><br>vs.<br><br>AETNA INC., AETNA LIFE INSURANCE COMPANY, INC., ABC CORPS. 1-100 and JOHN DOES 1-100,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION:ESSEX COUNTY<br><br>DOCKET NO. ESX-L- 7823-17<br><br>Civil Action<br><br>**COMPLAINT AND JURY DEMAND** |

## THE PARTIES

1.    Plaintiff, County of Essex (the "County"), is a body corporate and politic of the

State of New Jersey, having a principal address of 465 Dr. Martin Luther King, Jr. Boulevard,

Newark, New Jersey.

2.    Plaintiff Essex County Board of Chosen Freeholders (sometimes referred to

herein as the "County Board of Freeholders"), is a body corporate and politic of the State of New

Jersey operating and existing under the laws of the State of New Jersey, and which serves as the

governing body of the County of Essex.  In this capacity, the Board of Freeholders authorizes

competitive procurements for goods and services and the award of contracts consistent with the Local Public Contracts Law, N.J.S.A. 40A:11-1 et seq.

3.     Defendants Aetna Inc., and Aetna Life Insurance Company, Inc., are corporations of the State of Connecticut, and, together with their various corporate subsidiaries, affiliates and related entities (collectively, "Aetna"), have a principal business address of 151 Farmington Avenue, Hartford, Connecticut, and are registered to conduct business in the State of New Jersey.  At all times relevant to this action, Aetna, through Aetna Life Insurance Company, was registered with the New Jersey Department of Banking and Insurance as a carrier admitted to write health insurance policies in the State of New Jersey.

4.     Defendants ABC CORPS. 1-100 and JOHN DOES 1-100 are fictitious party defendants whose identities are presently unknown, but who at all relevant times assisted, aided and abetted Aetna in the commission of the wrongs and wrongful conduct alleged herein.

## THE COUNTY HEALTHCARE PLANS

5.     The County provides employer sponsored benefits to its current employees and retirees through various health insurance plans and coverage options, including medical, prescription, dental and eyeglass coverage.   Consistent with this practice, the County has historically offered its employees several different coverage options, including HMO, POS, PPO and traditional indemnity plans, at different price points and with varying employee contributory costs and benefits.

6.     From 2010 through 2016, the County contracted with Aetna to provide employer-sponsored benefits for all of the County's active and retired employees, their families and dependents, totaling approximately 5,000 covered individuals.  Over the duration of the County's six-year contractual relationship with Aetna, the County paid Aetna in excess of $600 million in

exchange for this insurance program. The payment of these benefits is one of the single largest drivers of costs for the County and its taxpayers, constituting approximately 10% of the County's entire annual budget.

7.     In 2009 and in connection with a publicly advertised procurement process, the County solicited and accepted proposals from several health insurers in connection with its health insurance needs for 2010. Aetna was among several insurance carriers, together with the incumbent carrier, Horizon Blue Cross and Blue Shield of New Jersey, which submitted a proposal to the County, on or about August 14, 2009.

8.     Aetna's proposal included several plan options with associated premium rates for several different coverage classes.

9.     Among other things, Aetna's proposal highlighted its ability to offer a "competitive financial package including a private fee for service program for retirees over 65."

10.     Thus, one of the key attractions, and material inducements for the County to select the Aetna proposal was the promise of materially lower healthcare costs for the County's retirees, a group of insureds that had traditionally incurred higher claims utilization and added expense to the cost of these benefits.

11.     While Aetna made promises to save the County money by placing Medicare-eligible retirees into a special Medicare-subsidized plan, Aetna did not expressly state in its proposal how it would calculate the premiums for any Medicare-eligible retirees choosing to remain in any of the other plans intended to cover active County employees.

12.     The specifications associated with the County's solicitation process required the winning proposer to agree that should it be awarded the County's healthcare business, any

3

"discrepancies between what is stated in your proposal responses and the contract shall be resolved in favor of the County of Essex."

13.    In reliance upon the proposal, negotiations, amendments and various oral and written representations made to the County by Aetna and its representatives, the County Board of Freeholders accepted Aetna's proposal, as amended, and awarded a contract commencing on January 1, 2010.

14.    To implement the terms of the proposal and contract award, Aetna entered into a series of service contracts or riders with the County for each class of coverage including, for example, a contract dated December 30, 2009, wherein Aetna agreed to provide the County's over-65, Medicare-eligible retirees with health insurance through what was alternately described as the Medicare Private Fee for Service, or "MPFFS" Plan, later known as the Medicare Advantage Plan.

15.    The agreement stated that Aetna would be paid pursuant to a Group Master Agreement and incorporated, among other documents, Aetna's 2009 proposal, which, together with the County's request for proposal and standard form of agreement, and the County Board of Freeholders' contract award resolution, constituted an integrated whole.

16.    Similar contract riders were issued on a per plan basis each year throughout the course of the six-year contractual relationship between the County and Aetna, until its termination on December 31, 2016.

17.    The County Board of Freeholders' resolutions included an annual financial authorization based upon the total forecasted plan premium for each calendar year by coverage class, using predicted enrollment numbers at the time of award.

18.   Thereafter, a true-up process ensued where premiums were billed and paid monthly by the County based upon invoices issued by Aetna to reflect actual enrollment in each coverage class.

19.   If additional funds were required to fund the monthly plan premiums during the course of the calendar year, an amendment to the subject plan resolution authorizing such expenditures was required.

20.   Furthermore, the County retained the right to review and retrospectively audit Aetna's billing practices.

21.   Accordingly, for the 2010 coverage year, the County Board of Freeholders approved a series of resolutions corresponding to each of the insurance coverage options offered by Aetna.

22.   On March 24, 2010, the Essex County Board of Chosen Freeholders adopted Resolution No. R-10-0223 with regard to the provision of health insurance benefits to all Medicare-eligible retirees over age 65. Pursuant to that resolution, it was determined by the Essex County Board of Chosen Freeholders that all of these retirees would be placed in the Medicare Advantage Plan.

23.   Resolution No. R-10-0223 listed 855 projected retirees in the Medicare Advantage Plan, for which the County was to be billed at a rate of $223.49 per month for each insured individual.

24.   On the same date, the Essex County Board of Chosen Freeholders also adopted Resolution No. R-10-0222, which appropriated funds and authorized the County to execute an agreement with regard to the Aetna traditional indemnity plan. As the expectation was that all Medicare-eligible retirees over age 65 would participate in the Medicare Advantage Plan,

2237038.1                                                   5

Resolution No. R-10-0222 did not contemplate the inclusion of any Medicare-eligible participants. Instead, the resolution by its terms applied only to "Active [employees] and Retirees Under 65".

25.     After the initial decision was made to place coverage with Aetna in 2010, the County re-solicited proposals from the marketplace for coverage for each successive year.

26.     Aetna participated in the proposal process each year by offering a proposed coverage schedule and rate sheet for each level of coverage.

27.     Aetna's proposals were evaluated each year and new contracts were awarded by way of resolutions adopted by the Essex County Board of Chosen Freeholders through 2016.

28.     In each successive year, Aetna's renewal term rate quotes were dictated by loss experience, revenue and enrolled census in the previous years.  In other words, if Aetna's premium revenue collected from the County in 2010 was found to be insufficient to cover its paid claims in that year, and thereby rendered its business unprofitable, then Aetna trued-up its losses by quoting the County increased renewal rates on a going forward basis.  Invariably, Aetna sought increased rates on a year to year basis.

29.     Thus, the entire coverage experience was an inextricably intertwined whole, and the parties maintained a continuous course of dealing and evolving contractual understanding over the entirety of their six-year relationship.

### THE COUNTY'S COMPLIANCE AUDIT PROCESS

30.     At the conclusion of 2016 and in response to a competitive procurement process, the County migrated its health insurance program to the State Health Benefits Program.  In or around December 2016, at the conclusion of Aetna's contract term, Plaintiff County of Essex

initiated an internal compliance audit of Aetna's historical billing practices to ascertain whether Aetna had charged, and collected the correct premium rates from the County.

31. That audit discovered that Aetna had systematically overcharged the County for premiums for a certain group of employees and retirees who had formerly worked for the Essex County Welfare Board prior to, and continuing after its merger into the County of Essex in 1979. As a consequence of that merger, the Supreme Court of New Jersey, in Gauer v. Essex County Division of Welfare, 108 N.J. 140 (1987), required the County to continue paying indefinitely for traditional indemnity health insurance for the so-called "Gauer" employees and their dependents.

32. Most of the Gauer employees are now retired and continue to receive health benefits under the precedent set by the Supreme Court's decision.

33. The County's investigation ultimately revealed that over the course of the six-year time period in which Aetna served as the County's health insurance carrier, Aetna had overcharged the County by at least $13.7 million in excessive monthly premiums with respect to the Gauer retirees.

34. The mechanism for Aetna's overcharge scheme was quite simple. The health insurance premiums for the Gauer retirees were paid to Aetna almost entirely at the County's expense, except for recent legislative changes which now require retirees to contribute a small portion of the cost of their health insurance.

35. The Gauer retirees were entitled under the Supreme Court precedent to enroll in Aetna's traditional indemnity insurance program, and indeed, any insurance program offered to the County's active employees.

36. In 2010, for example, the cost to the County for the traditional indemnity program offered to active County employees and retirees under 65 years of age was $660.92 for each

insured person, per month. The premium rate for this coverage increased each and every year thereafter.

37.    According to the resolutions adopted by the Essex County Board of Chosen Freeholders, the premium rate for traditional indemnity coverage was only intended to apply to current employees, or non-Medicare eligible retirees for whom Aetna was the primary insurance carrier.

38.    It was never intended that the County would pay the full rate of $660.92 per month for Medicare-eligible retirees, including the Gauer retirees.

39.    Once an employee or retiree reached the age of 65, those individuals became eligible to first receive Medicare insurance benefits from the federal government prior to invoking any private health insurance on a secondary basis.

40.    Under the Medicare program, primary health insurance claims are paid out by the federal government, which is subsidized through the Medicare payroll tax and not from premiums remitted by an employer to an employer-sponsored private health insurance program.

41.    Medicare does not provide the same level of coverage or provider network as a private health insurance plan. Thus, it is common for individuals to separately purchase, or for employers to sponsor a supplemental private health insurance program to fill the coverage gap between the lower benefits Medicare offers and what is more typical of a private health insurance plan.

42.    Under this arrangement, Medicare is the primary entity responsible for paying claims to health care providers, and the private insurance becomes a mere secondary payor. Obviously, the business cost to a private health insurance carrier acting as a secondary payor is far less than a primary payor once an insured becomes Medicare eligible, because the Medicare

program is responsible for paying for the bulk of the claims, and the secondary payor is only responsible for the difference up to the policy coverage limits.

43. Substantially all of the Gauer retirees were over 65 and Medicare-eligible individuals.

44. To secure the County's business, Aetna had offered the County the Medicare Advantage program, which was billed as a turnkey solution for County employees and retirees who were over 65 and thus Medicare eligible.

45. Under the Medicare Advantage program, Aetna worked with the federal government to package the primary Medicare coverage and secondary private health insurance into a single program under which the insureds would be issued a single insurance identification card and obtain their benefits solely through Aetna.

46. Through this plan, Aetna administered the claims process, collected millions of dollars in reimbursements directly from the federal Medicare program and then remitted aggregated, negotiated claims payments to the health care providers consistent with Aetna's negotiated rates with its network of physicians, health care facilities and other providers.

47. In other words, once retirees attained the age of 65 and become eligible for Medicare benefits, Aetna was effectively running a Medicare-subsidized health insurance program where the direct receipt of Medicare benefits from the federal government was subsidizing a large portion of Aetna's claims costs.

48. Each time an insured in the Medicare Advantage program visited a doctor, for example, Aetna paid the provider's claim at whatever rate it agreed to with that provider, and then billed the federal government, and received Medicare reimbursement for the service at the government allowed rate.

49.     If Aetna's contracted provider rate was higher than the government rate, Aetna was only out of pocket for the difference between the two. If, in fact, Aetna's contracted provider rate was lower than the government rate, then Aetna paid nothing out of pocket and pocketed the difference as additional profit.

50.     For example, if Medicare determined that the allowable rate for an office visit to an internist was $65, but the physicians in Aetna's network were contracted at a rate of $70 per visit, Aetna received $65 from Medicare and its net cost was the $5 difference.

51.     Thus, it was unsurprising – and touted as a cost savings advantage – that for the 2010 calendar year Aetna quoted the County a price of $223.49 per person for the Medicare Advantage program versus $660.92 per month for the comparable Aetna traditional indemnity program that was intended for under-65, non-Medicare eligible employees and retirees. This marked cost savings to the County was reflective of the embedded Medicare subsidy paid directly to Aetna by the federal government.

52.     The Gauer retirees were permitted to enroll in the retiree-based Medicare Advantage program, or could choose to remain in one of the several other non-Medicare HMO, PPO, POS or traditional indemnity options offered by the County to the active employees.

53.     In contrast, Medicare eligible County retirees who were not included in the scope of the Gauer decision were required to enroll in the Medicare Advantage program.

54.     Regardless of which program the Gauer retirees enrolled in, substantially all of them were enrolled in the federal Medicare program as their primary insurance, and Aetna's role was merely that of a secondary payor, with a much lower cost of providing coverage after accounting for the Medicare subsidy.

55.    For example, even if a Gauer retiree chose to enroll in the traditional indemnity program, Aetna still sought, and obtained reimbursement from the Medicare program with respect to such individuals.

56.    Aetna received these reimbursements from the federal government even though it was still charging the County for, and collecting premiums for those insured individuals.

57.    It was the County's expectation and understanding that if a Gauer retiree remained in the traditional indemnity plan, Aetna was nonetheless to deduct the Medicare subsidy from the higher $660.92 per month rate, and charge a lower premium to the County – akin to the $223.49 discounted Medicare Advantage rate – to account for the receipt of federal funds.

58.    The rate of $660.92 quoted by Aetna was intended to apply solely to active County employees and retirees under 65 years old for whom Aetna was not receiving a substantial Medicare subsidy.

59.    Aetna was not permitted to collect Medicare reimbursements from the federal government and charge the County the same premiums for retirees as it was receiving for non-Medicare, active employees.

60.    Instead, Aetna accepted reimbursements from the federal government, charged the County the same $660.92 premium rate for the Medicare-subsidized retirees as it did for the active, under 65 employees and retirees, and then pocketed the difference, thus effectively billing the federal government and the County government twice for the same service.

61.    It was not until the post-contract audit that the County discovered that Aetna was experiencing a monthly windfall by improperly and illegally keeping the savings from the

Medicare subsidy for its own profit and depriving the County of the benefit of the Medicare subsidy afforded to the Gauer retirees.

62.     The impropriety of this practice was confirmed by a review of the exchange of information between the parties in each policy year, wherein Aetna provided the County with rate sheets (attached hereto as Exhibit A), which reflected reduced premium rates for Medicare-eligible individuals.

63.     At contract inception, it was initially understood that the Gauer retirees would be migrated to the subsidized Aetna Medicare Advantage Plan with the rest of the County's Medicare-subsidized retiree population.

64.     According to a letter from Aetna, dated February 2, 2010, Aetna agreed that the Gauer retirees would be moved to the Medicare Advantage Plan. The letter further stated that exceptions to the enrollment of these individuals in the Medicare Advantage Plan and the assessment of the lower Medicare-subsidized premium rate would only be permitted on a case by case basis:

> It is assumed that all non-Gauer retirees and spouses of the non-Gauer retirees age 65 and over will be enrolled in an Aetna Medicare Advantage PFFS or Aetna Medicare Advantage PPO plan. Gauer retirees and spouses of Gauer retirees age 65 and over are encouraged to join one of the Aetna Medicare Advantage plans where available. **Exceptions will be made only in approved circumstances.** [emphasis added].

65.     Aetna did not make such exceptions for any Gauer retirees, and the County never agreed to pay higher rates for Medicare-subsidized Gauer retirees who chose to remain in a traditional indemnity, or other non-subsidized plan.

## AETNA'S MEDICARE-SUBSIDIZED PREMIUM RATE SHEETS

66.     Furthermore, prior to sending the County the rate sheet for the 2010 policy year, as part of the 2009 proposal documents, Aetna furnished the County with rate charts showing

that the County would be charged $223.49 per month for Medicare eligible Gauer retirees and $660.92 per month for non-Medicare eligible Gauer retirees.

67. The County was also provided with a second rate chart showing the higher premium rate for retirees who had not attained Medicare eligibility. Copies of the rate charts are attached hereto as Exhibits B and C.

68. Thus, through this illustration it was demonstrated that the County expected to pay a rate of $223.29 for Gauer retirees who had reached Medicare eligibility and $660.92 for those who had not, and chose to remain in the traditional indemnity plan.

69. Accordingly, the County should have been charged the lower rate for the Gauer retirees who were in Medicare, because Aetna was already receiving a subsidy from the federal government for those individuals.

70. Instead, Aetna improperly, fraudulently and illegally overcharged the County by billing the County the full rate of $660.92 for these individuals. Aetna similarly overcharged the County in each subsequent policy year through 2016.

71. The rate sheets were provided to the County by Aetna from 2010 through 2016 in the course of the parties' annual negotiations as to the premium rates and were relied upon by the County in considering, and ultimately accepting Aetna's annual renewal proposals.

72. In their course of dealing, a practice developed in the renewal process wherein the County was provided with documentation showing the difference between the Medicare and non-Medicare subsidized rates for the County's retirees. The exchange, and the County's acceptance of these rate sheets formed a material element of the agreement of the parties.

73. The rate sheets showed the price differential between those retirees for whom Aetna was receiving a Medicare subsidy and was thus acting merely as a secondary payor and,

on the other hand, those retirees who did not have Medicare and thus Aetna was acting as the primary payor.

74.    The County understood that it would be charged the lower, Medicare-subsidized rate for every retiree receiving Medicare within the applicable level of coverage.

75.    The County relied upon the rates set forth in the rate sheets to field questions from its retirees who periodically inquired with the County as to the premium rates and to confirm that the Medicare subsidy was being properly credited towards the retiree's contributory premium cost.

76.    The County further relied upon the accuracy of the subsidized rates reflected in the rate sheets in preparing the annual enrollment package, which was sent to the County's "billed" retirees prior to each policy year.

77.    By providing the rates found in the rate sheets, Aetna represented that it would charge the County the premium rates provided therein for the Gauer retirees, which included charging the Medicare subsidized rates for the Gauer Retirees.

## COUNT ONE
### (Breach of Contract)

78.    Plaintiffs repeat each and every allegation set forth in paragraphs 1-77 of this Complaint as if fully set forth herein.

79.    From 2010 through 2016, the parties entered into a series of inter-related agreements, as adopted by various resolutions of the Essex County Board of Chosen Freeholders, which incorporated by reference the County's form contract and request for proposals, Aetna's proposal response, and additional supplements to the proposal response, including rate sheets and amended rate sheets that were the result of written and in-person negotiations amongst the parties.    Aetna's proposal documents further incorporated by reference one of more master

contracts specifying the scope of the health insurance coverage being provided to the County's employees, retirees and their dependents.

80.   Pursuant to this series of agreements, the parties agreed to pay certain premium rates based upon predicted enrollment figures.   However, the parties established a course of dealing pursuant to which Aetna would issue invoices billing the County on a monthly basis for the purported actual enrollment figures, which the County would pay on a periodic basis pursuant to the authorizing resolutions.

81.   Through this true-up process, the parties engaged in a continuous practice of amending or modifying the initial agreement to adjust the billing to reconcile with actual employee and retiree enrollment.

82.   In those cases where actual enrollment figures exceeded the initial authorization, the County Board of Freeholders adopted later, supplemental resolutions formally authorizing an increase in funding.

83.   The original 2010 contract award was further amended numerous times and modified as a consequence of annual renewals, or extensions granted through 2016.

84.   In each renewal year, Aetna sought rate changes through rate action requests that were intended to adjust the premium rates to reconcile actual claims paid with actual premium revenue in the preceding calendar year.   That is, Aetna engaged in a continuous pattern of negotiation to increase the rates such that its book of business was profitable.   In this regard, Aetna sought to charge the County annual rates such that premiums paid to Aetna by the County exceeded claims paid out by Aetna to health care providers.

85.   In each year, Aetna related its prospective rate action request back to its prior loss experience and contractual relationship with the County.

86. Based upon these statements and representations, the County approved, and the parties entered into an inter-related and ongoing series of contracts that are inextricably intertwined.

87. Aetna has materially breached these agreements in numerous respects and numerous ways, and has thereby caused the County to suffer damages.

88. Among other things the County agreed to pay monthly health insurance premiums to Aetna and understood that premiums were to be billed by Aetna in accordance with the premium rates set forth in the rate sheets associated with the agreements.

89. The agreements provided one set of rates for retirees enrolled in the Medicare-subsidized plan – the Medicare Advantage Plan – and another set of rates for active employees and retirees under age 65 who were permitted to enroll in the traditional indemnity, PPO, POS and HMO plans.

90. The Aetna rates for the active employees and retirees under age 65 in the traditional indemnity, PPO, POS and HMO plans were higher because Aetna was not receiving a subsidy from the federal Medicare program for the active employees and retirees under age 65. and

91. It was agreed by the parties that all individuals age 65 or over would be required to enroll in the Medicare Advantage Plan, at a lower rate reflective of the substantial cost subsidy being provided to Aetna by the federal Medicare program.

92. Subsequently, the parties agreed that the Gauer retirees would be permitted to enroll in, and obtain benefits through programs other than the Medicare Advantage Plan.

93. The County was provided with supplemental rate sheets showing rates for Medicare-eligible retirees receiving benefits through programs other than the Medicare

Advantage Plan that were lower than the rates to be charged for the active employees and retirees under age 65.

94. Notwithstanding the foregoing, Aetna continued to charge the County the full rates for Gauer retirees enrolled in the traditional indemnity, PPO, POS and HMO plans even though Aetna continued to receive a substantial Medicare subsidy for these retirees from the federal Medicare program.

95. Aetna was not permitted under the parties' agreements to be paid twice for the same service, once through the federal subsidy, and a second time at the County's expense.

96. Aetna's actions as aforesaid are contrary to the agreements and constitute a material breach of those agreements.

97. Through this practice of double dipping, Aetna overcharged the County by in excess of $13.7 million.

## COUNT TWO
### (Breach Of Implied Covenant of Good Faith and Fair Dealing)

98. Plaintiffs repeat each and every allegation set forth in paragraphs 1-97 of this Complaint as is fully set forth herein.

99. The County's commercial expectation in entering into the agreement with Aetna was that the premiums charged to the County for the Gauer and other Medicare-eligible retirees would be net of the Medicare subsidy that Aetna was receiving from the federal Medicare program for those insureds.

100. Aetna provided the County with a set of rate sheets demonstrating a price differential between the Medicare and non-Medicare subsidized retirees. The County relied upon those differentiated rate sheets and expected that it would be charged less for the Medicare-subsidized retirees than the active employees and retirees under 65 years old.

101. Notwithstanding the foregoing, Aetna continued to bill the County the same rates for the Medicare-subsidized Gauer retirees as the active, non-Medicare eligible County employees and retirees under 65 years old.

102. In doing so, Aetna proffered one or more rate increase requests purporting to demonstrate to the County that its premium revenues from the County were not sufficient to cover the historical loss experience for the County's insured population including the Gauer retirees.

103. Aetna's rate increase requests concealed, and did not account for the fact that Aetna was already receiving a Medicare subsidy from the federal government.

104. It was the County's bargained for contractual expectation that the premium rates charged to the County would be attenuated, or offset by Aetna's receipt of a significant federal subsidy.

105. Aetna breached its duty of good faith and fair dealing by arbitrarily, capriciously and in bad faith overcharging the County for insurance premiums in a manner which deprived the County of the expected contractual benefit associated with the Medicare subsidies attached to the Gauer retirees.

106. The County has thereby suffered damages.

## COUNT THREE
### (Reformation of Written Contract—Mutual Mistake)

107. Plaintiffs repeat each and every allegation set forth in paragraphs 1-106 of this Complaint as is fully set forth herein.

108. The parties initially agreed that all Medicare-eligible retirees, including the Gauer retirees, would be enrolled in the Medicare Advantage Plan, while the active employees and

retirees under age 65 would be eligible to enroll in the traditional indemnity, PPO, POS and HMO plans.

109. Accordingly, the 2010 County Board of Freeholders resolutions authorizing the award of the contract to Aetna specified insurance rates for Medicare-eligible employees in the Medicare Advantage Plan and a second set of rates for non-Medicare eligible employees and retirees in all other plans.

110. The initial resolutions and associated contract documents did not explicitly specify a separate set of rates for Medicare-eligible employees and retirees, including the Gauer retirees, in the traditional indemnity, PPO, POS and HMO plans.

111. Thereafter, by virtue of the Gauer Supreme Court decision, the Gauer retirees claimed an entitlement to, and were permitted to enroll in the traditional indemnity, PPO, POS and HMO plans.

112. The County requested, and did subsequently receive rate sheets it understood depicted lower, Medicare-subsidized premium rates for those Gauer retirees choosing to enroll in a program other than the Medicare Advantage Plan.

113. To the extent through mutual mistake the parties did not initially account for the inclusion of the Gauer retirees in the traditional indemnity, PPO, POS or HMO plans, and thereby omitted an express contract term, the parties agreed that such "discrepancies between what is stated in your proposal responses and the contract shall be resolved in favor of the County of Essex."

114. The County understood that to the extent there was a missing term to the parties' agreement, any such discrepancies would be resolved in the County's favor.

115. The County understood that the premium rate that would be charged for the Medicare-subsidized Gauer retirees was subjected to the reduced rates set forth in the supplemental rate sheets.

116. To the extent that Aetna denies that the reduced rates were expressly incorporated into the contract, then the missing term was not so provided for and there was a mutual mistake and/or missing term with respect to the premiums to be charged for the Gauer retirees enrolled in all plans other than the Medicare Advantage Plan.

117. As such, the lower rates specified in the supplemental rate sheets should be enforced as a binding contractual term.

118. As a result of the mutual mistake made by County and Aetna as to the terms of the contract, the County has suffered undue prejudice in that it was improperly charged excessive premiums with respect to the Gauer retirees.

119. If the agreements between the parties are not reformed to reflect the proper premium to be charged for the Gauer retirees, the County will suffer damages in the form of overpayment of more than $13.7 million in excessive premiums paid by it to Aetna. These costs are ultimately shouldered by the Essex County taxpayers who have to foot the bill for Aetna's windfall.

## COUNT FOUR
### (Promissory Estoppel)

120. Plaintiffs repeat each and every allegation set forth in paragraphs 1-119 of the Complaint as if fully set forth herein.

121. Aetna's statements as aforesaid, that the County would be charged lower premium rates for the Medicare-subsidized Gauer retirees constituted a clear and definite promise.

122.    Aetna made such statements and promises with the intention that the County rely thereon.

123.    The County did, in fact, detrimentally rely upon Aetna's promises and awarded Aetna a series of contracts from 2010-2016, requiring the expenditure of in excess of $600 million for health insurance.

124.    The County's reliance upon Aetna's promises was reasonable and appropriate under the circumstances.

## COUNT FIVE
### (Negligent Misrepresentation)

125.    Plaintiffs repeat each and every allegation set forth in paragraphs 1-124 of this Complaint as is fully set forth herein.

126.    It was the County's understanding that the Gauer retirees would be permitted to enroll in the traditional indemnity, PPO, POS and HMO plans at a reduced cost to the County to reflect Aetna's receipt of a Medicare subsidy for these individuals.

127.    The County reasonably relied on Aetna's promises and expected Aetna would pass along the Medicare subsidy savings to it with respect to the Gauer retirees enrolled in these plans.

128.    Nowhere in the proposal or other documents that were exchanged between the parties as part of the 2010 contract award, or in any other renewal year thereafter, did Aetna advise the County that it would not realize the Medicare subsidy savings if the Gauer retirees did not enroll in the Medicare Advantage Plan.

129.    Nowhere in the proposal or other documents that were exchanged between the parties as part of the 2010 contract award, or in any other renewal year thereafter, did Aetna

advise the County that Aetna would not honor the rates set forth in the supplemental rate sheets showing a reduced rate for the Gauer retirees.

130.   To the contrary, rate sheets showing reduced rates for the Gauer retirees were provided to the County in the course of the parties' annual negotiations as to the premium rates and were important documents for the County's consideration as to Aetna's contract offer and an integral part of the parties' yearly contract negotiations.

131.   Through such negotiations, Aetna represented that it would charge the County reduced rates for the Medicare-subsidized retirees, which included the Gauer retirees.

132.   The County relied on Aetna's representation that it would charge the County for such retirees at a lower rate than non-Medicare, active employees.

133.   Had the County known that Aetna planned to bill the County the higher premium rates without regard to the inclusion of the Gauer retirees in the Medicare program, it would not have awarded its healthcare business to Aetna in 2010 or any of the following policy years through 2016.

134.   By the aforesaid conduct Aetna negligently misrepresented to the County that it would charge the County the lower premium rates for its Medicare-subsidized retirees, including the Gauer retirees.

135.   By failing to do so, Aetna overcharged the County premiums with respect to the Gauer retirees, and has accordingly caused the County to suffer damages.

## COUNT SIX
### (Fraud/Fraud in the Inducement/Equitable Fraud)

136.   Plaintiffs repeat each and every allegation set forth in paragraphs 1-135 of this Complaint as is fully set forth herein.

137.   As an inducement to obtain the County's healthcare business, Aetna represented that it would provide an economical and cost-effective solution to reduce the County's escalating health insurance costs.

138.   Aetna represented that its ability to work with the Medicare program, and to obtain cost savings from Medicare would result in reduced health insurance premiums for the Medicare-eligible retirees, including the Gauer retirees.

139.   Aetna represented to the County that the cost savings associated with Aetna's receipt of Medicare subsidies would be passed along to the County.

140.   Aetna represented to the County through communications and contacts that the Gauer retirees in the traditional indemnity, PPO, POS and HMO plans would be charged at lower premium rates because of the existence of a Medicare subsidy.

141.   Aetna further submitted rate increase requests to the County on an annual basis that were premised upon its statements that premium payments from the County were not sufficient to cover its claims experience.

142.   Aetna sought, and received increased premium rates from the County in each year of the contract based upon these calculations.

143.   However, Aetna did not disclose or otherwise reveal to the County in its rate increase requests that it was already receiving Medicare subsidies from the federal government for the Gauer retirees.

144.   Thus, Aetna's rate increase requests did not disclose or reveal the nature and extent of this additional source of revenue, and did not break down the differential between the health care provider payments borne by Medicare as primary payor from Aetna's actual out of pocket cost as a mere secondary payor.

145.   The County detrimentally relied upon Aetna's statements and expected that Aetna would pass along the Medicare subsidy savings to it with respect to the Gauer retirees.

146.   The County further detrimentally relied upon Aetna's statements in accepting or granting rate increase requests on an annual basis.

147.   Aetna made numerous material misstatements or omissions of material facts with the intent that the County rely upon such statements to its detriment.

148.   The County has suffered damages as a consequence of Aetna's acts.

149.   By the aforesaid conduct, Aetna fraudulently induced the County to contract with Aetna in each policy year from 2010-2016.

**COUNT SEVEN**
**(Fraudulent Concealment or Misrepresentation )**

150.   Plaintiffs repeat each and every allegation set forth in paragraphs 1-149 of this Complaint as is fully set forth herein.

151.    The County reasonably relied on Aetna's statements and expected Aetna would pass along the Medicare subsidy savings to it with respect to the Gauer retirees.

152.   The County further relied upon Aetna's statements that it would charge the County for the Gauer retirees in accordance with the lower, Medicare-subsidized rates identified in the supplemental rate sheets.

153.   Aetna knew and purposefully charged the County the more expensive unsubsidized premium rates despite its representations to the contrary.

154.   Aetna concealed from, and did not disclose to the County in its annual rate increase requests that it was receiving additional, undisclosed subsidies from the Medicare program for the Gauer retirees.

155. Aetna misled the County with the purposeful and fraudulent intent of retaining the Medicare subsidy savings for itself as a windfall.

156. Aetna knew that County would mistakenly rely on the supplemental rate sheets evidencing lower rates for the Gauer retirees, and knowingly and purposefully caused the rate sheets to be sent to County with intent that the County would rely on the rate sheets to its detriment.

157. Aetna's fraud was only discovered by the County in 2017 as a result of the County's post-contract compliance audit.

158. Had the County known that Aetna planned to fraudulently bill the County the higher, unsubsidized premium rates set forth, it would not have awarded its healthcare business to Aetna in 2010 or any of the following policy years through 2016.

159. By the aforesaid conduct Aetna fraudulently overcharged the County for excessive premiums with respect to the Gauer retirees.

## COUNT EIGHT
### (Unjust Enrichment)

160. Plaintiffs repeat each and every allegation of paragraphs 1-159 of this Complaint as if fully set forth herein.

161. Aetna charged the County the same premium rates for the Gauer retirees as it did for the active employees and retirees under age 65, who were not receiving a Medicare subsidy.

162. To the extent that Aetna charged the County a full premium rate for the Gauer retirees where Aetna was already receiving a Medicare subsidy, Aetna received payment twice for the same services.

163. It was contrary to principles of commercial reasonableness and fairness for Aetna to charge the County the same rates for two different rate classes.

164.   Aetna's business practices constitute double dipping, and unfairly inflated the cost of health care coverage for the County, its taxpayers, and its employees and retirees and their families.

165.   By overcharging the County for insurance premiums for the Gauer retirees, Aetna has realized a windfall on the backs of the taxpayers of Essex County.

166.   By virtue of the acts and activities complained of herein, Aetna has been unjustly enriched at the cost of Essex County taxpayers who ultimately have funded over $13.7 million in excessive premiums charged by Aetna.

167.   Aetna has been unjustly enriched, and the County has been injured by such unjust enrichment.

WHEREFORE, Plaintiffs seek judgment against Defendant for compensatory damages and punitive damages together with interest thereon, costs and attorneys fees, and such other and further relief as the Court may deem proper.

## JURY DEMAND

Plaintiff County hereby demands a trial by jury with respect to all triable issues.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:5-1(c), Thomas A. Abbate is hereby designated as trial counsel for Plaintiff.

## CERTIFICATION PURSUANT TO R. 4:5-1

The undersigned certifies that the matter in controversy is not the subject of any other action pending in any court and is likewise not the subject of any pending arbitration proceeding. I further certify that I have no knowledge of any contemplated action or arbitration proceeding

regarding the subject matter of this action and that I am not aware of any other parties who

should be joined in this action.

DECOTIIS, FITZPATRICK,
COLE & GIBLIN, LLP

By: _____
Thomas A. Abbate

Dated: November 6, 2017

# Exhibit A

Sheet1

# 2010
## BILLED RETIREES HEALTH BENEFITS MONTHLY PREMIUM RATES

| COVERAGE | A TRADITIONAL (with Prescription) | E POS CHOICE 100/80 | T N POS W/ RX AND DENTAL 100/60 | A MEDICARE PFFS ( w/ Prescription)* | MEDICARE ADVANTAGE PPO (with Prescription) |
|---|---|---|---|---|---|
| **SINGLE**<br>w/o Medicare<br>w/ Medicare | $ 665.92 | $ 516.56 | $ 449.68 | $ 228.49 | per eligible person<br><br>$ 187.70 |
| **Parent & Child**<br>Both w/o Medicare<br>1 w/ Medicare | $ 1,226.15<br>$ 889.41 | $ 1,037.78<br>$ 740.05 | $ 689.46<br>$ 673.17 | | per eligible person |
| **Husband & Wife**<br>Both w/o Medicare<br>1 w/ Medicare<br>Both w/ Medicare | $ 1,421.40<br>$ 889.41 | $ 1,163.27<br>$ 740.05 | $ 936.36<br>$ 673.17 | $ 451.98 | per eligible person<br><br><br>$ 187.70 |
| **Family**<br>Both w/o Medicare<br>1 w/ Medicare<br>Both w/ Medicare | $ 1,807.87<br>$ 1,449.64<br>$ 1,112.90 | $ 1,509.15<br>$ 1,261.27<br>$ 963.54 | $ 1,124.24<br>$ 912.95<br>$ 896.66 | | |

Note: The above plan rates applies only to retirees who are not entitled to free health insurance and are eligible and participating in the

County if Essex Group Health Plans. *Medicare PFFS excludes Prescription for retirees who are enrolled in POS Choice in 2009.

Effective Jan. 1, 2010

## 2011
## BILLED/PENSION RETIREE HEALTH BENEFITS MONTHLY PREMIUM RATES

| | TRADITIONAL (W/RX) | | TRADITIONAL PLAN (with Optional Prescription for Retirees on Medicare) | | | POS WITH DENTAL (Prescription rider included) | POS CHOICE (No Prescription) | MEDICARE ADVANTAGE PPO (With Medicare Prescription Drug Plan) |
|---|---|---|---|---|---|---|---|---|
| | Medical Premium (For Retirees and Dependents NOT on Medicare) | Medical Premium (For Retirees and Spouses on Medicare) | Total Medical Rate | OPTIONAL * Prescription (For Retirees/Spouses on Medicare) | Total Traditional Premium Rate | Total Rate | Total Rate | Total Rate |
| **SINGLE** | | | | | | | | Per eligible person |
| w/o Medicare | $1,051.90 | N/A | $1,051.90 | Included In Medical Rate | $1,051.90 | $604.84 | $588.64 | |
| w/ Medicare | N/A | $212.04 | $212.04 | $286.89 | $498.93 | $326.65 | $212.04 | $179.31 |
| **Parent & Child** | | | | | | | | |
| Both w/o Medicare | $1,939.30 | N/A | $1,939.30 | Included In Medical Rate | $1,939.30 | $925.26 | $1,183.13 | |
| 1 w/ Medicare | $1,051.90 | $212.04 | $1,263.94 | $286.89 | $1,550.83 | $584.64 | $600.69 | |
| **Husband & Wife** | | | | | | | | Per eligible person |
| Both w/o Medicare | $2,248.58 | N/A | $2,248.58 | Included In Medical Rate | $2,248.58 | $1,262.36 | $1,329.42 | |
| 1 w/ Medicare | $1,051.90 | $212.04 | $1,263.94 | $286.89 | $1,550.83 | $935.61 | $800.69 | $179.31 |
| Both w/ Medicare | N/A | $424.08 | $424.08 | $568.78 | $992.86 | $657.62 | $424.08 | |
| **Family** | | | | | | | | |
| Both w/o Medicare | $2,860.75 | N/A | $2,860.75 | Included In Medical Rate | $2,860.75 | $1,511.98 | $1,720.94 | |
| 1 w/ Medicare | $1,939.30 | $212.04 | $2,151.34 | $286.89 | $2,438.23 | $1,244.86 | $1,395.17 | |
| Both w/ Medicare | $1,051.90 | $424.08 | $1,475.98 | $568.78 | $2,044.76 | $1,204.24 | $1,012.72 | |

Effective Jan. 1, 2011

* Retirees enrolled in the Medicare PPO 100% plan and currently in the Traditional Plan for Prescription will automatically be billed for the optional prescription coverage unless the County of Essex is advised otherwise that you don't want to maintain the coverage for prescription.

**(BILLED RETIREES) NEW:** THOSE BILLED RETIREES COVERED BY MEDICARE PPO 100% ($212.04 Per Person Per Month) WILL BE BILLED DIRECTLY BY AETNA FOR THE MEDICAL PLAN PORTION OF THE COVERAGE. MEDICARE PPO 100% PARTICIPANTS COVERED UNDER THE TRADITIONAL PLAN PRESCRIPTION DRUG COVERAGE WILL RECEIVE A SEPARATE BILL FROM PAYFLEX FOR THE OPTIONAL PRESCRIPTION PORTION OF COVERAGE. THOSE BILLED RETIREES COVERED UNDER THE POS WITH DENTAL PLAN WILL RECEIVE A SEPARATE BILL FROM PAYFLEX FOR THE PRESCRIPTION AND DENTAL PORTION OF COVERAGE.

## 2012
### BILLED/PENSION RETIREE HEALTH BENEFITS MONTHLY PREMIUM RATES

| | MEDICARE ADVANTAGE PPO (With Medicare, Prescription Drug Plan) | MEDICARE PPO 100% (With County of Essex Aetna Medicare PDP) | TRADITIONAL PLAN (non-Medicare) MEDICARE PPO 100% (with Medicare) Traditional RX included | POS CHOICE (No Prescription) | POS WITH DENTAL (Prescription rider included) | NEW OPTION POS 15 (No Prescription) | NEW OPTION HMO (No Prescription) |
|---|---|---|---|---|---|---|---|
| | Total Rate | Total Rate | Total Rate | Total Rate | Total Rate | Total Rate | Total Rate |
| **SINGLE** w/o Medicare / w/ Medicare | Per eligible person $190.74 | Per eligible person $286.22 | $1,224.84 / $555.68 | $703.69 / $222.28 | $772.84 / $352.43 | $612.98 / $222.28 | $539.72 / $222.28 |
| **Parent & Child** Both w/o Medicare / 1 w/ Medicare | | | $2,258.46 / $1,775.32 | $1,366.27 / $925.97 | $1,142.95 / $1,070.68 | $891.44 / $835.26 | $784.62 / $762.00 |
| **Husband & Wife** Both w/o Medicare / 1 w/ Medicare / Both w/ Medicare | Per eligible person $190.74 | Per eligible person $286.22 | $2,618.77 / $1,775.32 / $1,106.36 | $1,663.20 / $925.97 / $444.56 | $1,538.31 / $1,131.13 / $710.72 | $1,208.56 / $835.26 / $444.56 | $1,061.76 / $762.00 / $444.56 |
| **Family** Both w/o Medicare / 1 w/ Medicare / Both w/ Medicare | | | $3,331.85 / $3,142.54 / $2,331.00 | $2,022.82 / $1,618.55 / $1,148.25 | $1,823.94 / $1,487.99 / $1,415.92 | $1,419.53 / $1,113.72 / $1,057.54 | $1,104.74 / $1,005.90 / $984.28 |

**(BILLED RETIREES) REMINDER:** THOSE BILLED RETIREES COVERED BY MEDICARE PPO 100% ($222.28 Per Person Per Month) WILL BE BILLED DIRECTLY BY AETNA FOR THE MEDICAL PLAN PORTION OF THE COVERAGE. MEDICARE PPO 100% PARTICIPANTS COVERED UNDER THE TRADITIONAL PLAN PRESCRIPTION DRUG COVERAGE WILL RECEIVE A SEPARATE BILL FROM PAYFLEX FOR THE TRADITIONAL PRESCRIPTION PLAN PORTION OF COVERAGE. THOSE BILLED RETIREES COVERED UNDER THE POS WITH DENTAL PLAN WILL RECEIVE A SEPARATE BILL FROM PAYFLEX FOR THE PRESCRIPTION AND DENTAL PORTION OF COVERAGE.

**(BILLED RETIREES) REMINDER:** THOSE BILLED RETIREES COVERED BY MEDICARE PPO 100% ($222.28 Per Person Per Month) WHO ELECT THE COUNTY OF ESSEX MEDICARE PDP ($63.94) OPTION WILL BE BILLED DIRECTLY BY AETNA FOR BOTH THE MEDICAL PLAN AND MEDICARE PDP PRESCRIPTION COVERAGE. THESE BILLS WILL BE SEPARATE INVOICES.

## 2013
## BILLED/PENSION RETIREE HEALTH BENEFITS MONTHLY PREMIUM RATES

| | MEDICARE ADVANTAGE PPO (With Medicare Prescription Drug Plan) | MEDICARE PPO 100% (With County of Essex Aetna Medicare PDP) | TRADITIONAL PLAN (non-Medicare) MEDICARE PPO 100% (With Medicare) Traditional RX Included | POS CHOICE (No Prescription) | POS WITH DENTAL (Prescription rider included) | NEW OPTION POS 15 (No Prescription) | NEW OPTION HMO (No Prescription) |
|---|---|---|---|---|---|---|---|
| | Total Rate | Total Rate | Total Rate | Total Rate | Total Rate | Total Rate | Total Rate |
| **SINGLE** w/o Medicare w/ Medicare | Per eligible person $195.99 | Per eligible person $294.09  228.39  65.70  290.09 | $1,253.84 $589.64 | $729.42 $228.39 | $790.85 $391.15 | $527.54 $228.39 | $552.62 $228.39 |
| **Parent & Child** Both w/o Medicare 1 w/ Medicare | | | $2,312.41 $1,818.45 | $1,429.69 $949.61 | $1,159.35 $1,099.35 | $912.98 $659.93 | $803.29 $760.91 |
| **Husband & Wife** Both w/o Medicare 1 w/ Medicare Both w/ Medicare | Per eligible person $195.99 | Per eligible person $294.09 | $2,661.25 $1,818.48 $1,134.28 | $1,609.51 $948.91 $459.78 | $1,572.22 $1,159.13 $728.44 | $1,236.33 $665.93 $459.78 | $1,087.08 $760.91 $459.78 |
| **Family** Both w/o Medicare 1 w/ Medicare Both w/ Medicare | | | $3,411.60 $3,216.30 $2,386.12 | $2,071.13 $1,557.97 $1,177.20 | $1,969.28 $1,523.07 $1,450.07 | $1,453.40 $1,141.05 $1,094.32 | $1,131.07 $1,031.68 $1,008.30 |

228.39

(BILLED RETIREES) REMINDER: THOSE BILLED RETIREES COVERED BY MEDICARE PPO 100% ($222.26 Per Person Per Month) WILL BE BILLED DIRECTLY BY AETNA FOR THE MEDICAL PLAN PORTION OF THE COVERAGE. MEDICARE PPO 100% PARTICIPANTS COVERED UNDER THE TRADITIONAL PLAN PRESCRIPTION DRUG COVERAGE WILL RECEIVE A SEPARATE BILL FROM PAYFLEX FOR THE TRADITIONAL PRESCRIPTION PLAN PORTION OF COVERAGE. THOSE BILLED RETIREES COVERED UNDER THE POS WITH DENTAL PLAN WILL RECEIVE A SEPARATE BILL FROM PAYFLEX FOR THE PRESCRIPTION AND DENTAL PORTION OF COVERAGE.

(BILLED RETIREES) REMINDER: THOSE BILLED RETIREES COVERED BY MEDICARE PPO 100% ($222.26 Per Person Per Month) WHO ELECT THE COUNTY OF ESSEX MEDICARE PDP ($63.94) OPTION WILL BE BILLED DIRECTLY BY AETNA FOR BOTH THE MEDICAL PLAN AND MEDICARE PDP PRESCRIPTION COVERAGE. THESE BILLS WILL BE SEPARATE INVOICES.

1/2  65.70

## 2014
### BILLED/PENSION RETIREE HEALTH BENEFITS MONTHLY PREMIUM RATES

| | MEDICARE ADVANTAGE PPO (with Prescription) Medicare PPO 100% (Basic) | MEDICARE PPO 90% (with Prescription) Medicare Advantage PPO | TRADITIONAL PLAN (with Prescription) (HDC Carrier 100% only) (Traditional Plan) | POS (with Prescription) (AmeriHealth POS) | POS WITH DENTAL (AmeriHealth POS) (Traditional) | HDC PLAN (No Prescription) | HMO (No Prescription) |
|---|---|---|---|---|---|---|---|
| | Total Rate | Total Rate | Total Rate | Total Rate | Total Rate | Total Rate | Total Rate |
| **SINGLE**  w/o Medicare  w/ Medicare | Per eligible person  $195.99 | Per eligible person  $294.09 | $1,339.71  $507.30 | $800.55  $228.39 | $877.89  $374.20 | $597.28  $228.39 | $813.84  $228.39 |
| **Parent & Child**  Both w/o Medicare  1 w/ Medicare | | | $2,670.54  $1,898.01 | $1,589.13  $1,028.94 | $1,299.91  $1,163.15 | $1,014.32  $925.65 | $862.70  $842.23 |
| **Husband & Wife**  Both w/o Medicare  1 w/ Medicare  Both w/ Medicare | Per eligible person  $195.99 | Per eligible person  $294.09 | $2,981.10  $1,898.01  $1,209.60 | $1,779.21  $1,028.94  $459.78 | $1,748.22  $1,259.17  $799.78 | $1,373.13  $925.63  $459.78 | $1,208.23  $842.23  $459.78 |
| **Family**  Both w/o Medicare  1 w/ Medicare  Both w/ Medicare | | 228.39  65-70 | $3,762.14  $3,552.03  $2,603.31 | $2,392.54  $1,917.52  $1,257.33 | $2,070.63  $1,863.40  $1,556.84 | $1,615.62  $1,242.71  $1,154.04 | $1,257.19  $1,121.09  $1,070.62 |

*(handwritten notes)*
Trad 373.91 Rx / 5.00 Drug / + 228.39 Med 3 = 607.30

hs 140.61 Rx + Dental / 5.00 Dental / + 228.39 Med = 374.20

(BILLED RETIREES) REMINDER: THOSE BILLED RETIREES COVERED BY MEDICARE 100% ($228.39 Per Person Per Month) WILL BE BILLED DIRECTLY BY AETNA FOR THE MEDICAL PLAN PORTION OF THE COVERAGE. MEDICARE PPO 100% PARTICIPANTS COVERED UNDER THE TRADITIONAL PLAN PRESCRIPTION DRUG COVERAGE WILL RECEIVE A SEPARATE BILL FROM PAYFLEX FOR THE TRADITIONAL PRESCRIPTION PLAN PORTION OF COVERAGE. THOSE BILLED RETIREES COVERED UNDER THE POS WITH DENTAL PLAN WILL RECEIVE A SEPARATE BILL FROM PAYFLEX FOR THE PRESCRIPTION AND DENTAL PORTION OF COVERAGE.

(BILLED RETIREES) REMINDER: THOSE BILLED RETIREES COVERED BY MEDICARE PPO 100% ($228.39 Per Person Per Month) WHO ELECT THE COUNTY OF ESSEX MEDICARE PDP ($65.70) OPTION WILL BE BILLED DIRECTLY BY AETNA FOR BOTH THE MEDICAL PLAN AND MEDICARE PDP PRESCRIPTION COVERAGE. THESE BILLS WILL BE SEPARATE INVOICES.

## 2015
## BILLED/PENSION RETIREE HEALTH BENEFITS MONTHLY PREMIUM RATES

| | MEDICARE ADVANTAGE PPO (With Medicare Prescription Drug Plan) | MEDICARE PPO 100% (with County of Essex Aetna Medicare PDP) | TRADITIONAL PLAN (non-Medicare) MEDICARE PPO 100% (with Medicare) Traditional RX Included | POS CHOICE (No Prescription) | POS WITH DENTAL (Prescription rider included) | POS 15 (No Prescription) | HMO (No Prescription) |
|---|---|---|---|---|---|---|---|
| | Total Rate | Total Rate | Total Rate | Total Rate | Total Rate | Total Rate | Total Rate |
| **SINGLE** w/o Medicare | Per eligible person | Per eligible person | $1,462.59 | $951.47 | $933.03 | $741.56 | $652.61 |
| w/ Medicare | $213.59 | $305.98 | $631.23 | $228.39 | $392.84 | $328.39 | $328.39 |
| **Parent & Child** Both w/o Medicare | | | $2,738.05 | $1,680.51 | $1,376.73 | $1,076.92 | $949.51 |
| 1 w/ Medicare | | | $2,108.62 | $1,079.86 | $1,250.52 | $969.95 | $881.20 |
| **Husband & Wife** Both w/o Medicare | Per eligible person | Per eligible person | $3,171.57 | $1,932.76 | $1,865.63 | $1,490.63 | $1,255.25 |
| 1 w/ Medicare | $213.59 | $305.98 | $2,103.62 | $1,079.88 | $1,324.05 | $969.95 | $951.20 |
| Both w/ Medicare | | | $1,297.48 | $458.78 | $773.83 | $458.78 | $458.78 |
| **Family** Both w/o Medicare | | | $4,035.58 | $2,449.58 | $2,201.59 | $1,718.70 | $1,337.33 |
| 1 w/ Medicare | | | $3,764.12 | $1,916.80 | $1,753.68 | $1,307.31 | $1,177.90 |
| Both w/ Medicare | | | $2,740.65 | $1,509.25 | $1,525.47 | $1,198.34 | $1,109.53 |

(BILLED RETIREES) REMINDER: THOSE BILLED RETIREES COVERED BY MEDICARE PPO 100% ($228.39 Per Person Per Month) WILL BE BILLED DIRECTLY BY AETNA FOR THE MEDICAL PLAN PORTION OF THE COVERAGE. MEDICARE PPO 100% PARTICIPANTS COVERED UNDER THE TRADITIONAL PLAN PRESCRIPTION DRUG COVERAGE WILL RECEIVE A SEPARATE BILL FROM PAYFLEX FOR THE TRADITIONAL PRESCRIPTION PLAN PORTION OF COVERAGE. THOSE BILLED RETIREES COVERED UNDER THE POS WITH DENTAL PLAN WILL RECEIVE A SEPARATE BILL FROM PAYFLEX FOR THE PRESCRIPTION AND DENTAL PORTION OF COVERAGE.

(BILLED RETIREES) REMINDER: THOSE BILLED RETIREES COVERED BY MEDICARE PPO 100% ($228.39 Per Person Per Month) WHO ELECT THE COUNTY OF ESSEX MEDICARE PDP ($77.59) OPTION WILL BE BILLED DIRECTLY BY AETNA FOR BOTH THE MEDICAL PLAN AND MEDICARE PDP PRESCRIPTION COVERAGE. THESE BILLS WILL BE SEPARATE INVOICES.

*[handwritten, top right]*
Over 65 Pos w/ Dental — 248.39 Med
160.87 Rx
17.18 Dent
+ 5.00 fee
Simple 421.44

## 2016
### BILLED/PENSION RETIREE HEALTH BENEFITS MONTHLY PREMIUM RATES

| | MEDICARE ADVANTAGE PPO (With Medicare Prescription Drug Plan) | MEDICARE PPO 100% (With County of Essex Aetna Medicare PDP) | TRADITIONAL PLAN (non-Medicare) MEDICARE PPO 100% (with Medicare) Traditional RX included | POS CHOICE (No Prescription) | POS WITH DENTAL (Prescription rider included) | POS 15 (No Prescription) | HMO (No Prescription) |
|---|---|---|---|---|---|---|---|
| | Total Rate | Total Rate | Total Rate | Total Rate | Total Rate | Total Rate | Total Rate |
| **SINGLE** w/o Medicare w/ Medicare | Per eligible person $248.59 | Per eligible person $340.98 | $1,847.18 $704.94 | $948.76 $248.39 ↓ | $1,038.39 $421.44 | $823.81 $248.39 | $740.26 $248.39 |
| **Parent & Child** Both w/o Medicare 1 w/ Medicare | | | $3,039.16 $2,347.12 | $1,878.26 $1,194.15 | $1,533.65 $1,383.92 | $1,198.65 $1,072.00 | $1,077.02 $962.65 |
| **Husband & Wife** Both w/o Medicare 1 w/ Medicare Both w/ Medicare | Per eligible person $248.59 | Per eligible person $340.98 | $3,524.30 $2,347.12 $1,404.88 | $2,103.04 $1,194.15 $498.78 | $2,968.22 $1,469.78 $962.81  ✱ | $1,822.54 $1,072.00 $496.78 | $1,459.10 $988.65 $498.78 |
| **Family** Both w/o Medicare 1 w/ Medicare Both w/ Medicare | *118.73 Med + 129.86 PDP 248.59* | *248.39 Med 192.59 (PDP) $340.98* | $4,494.66 $4,195.63 $3,092.06 | $2,721.69 $2,139.55 $1,442.94 | $2,450.26 $2,197.02 $1,769.09 | $1,909.59 $1,446.94 $1,320.39 | $1,817.19 $1,325.41 $1,237.04 |

*[handwritten below Family row, centered]*
Pos w/ Dental over 65  H + W  496.78
+ Rx Rider                   34.39
                           + 316.64
→ 847.81
+ 5.00 fees
850.81 ✱

**(BILLED RETIREES) REMINDER:** THOSE BILLED RETIREES COVERED BY MEDICARE PPO 100% ($248.39 Per Person Per Month) WILL BE BILLED DIRECTLY BY AETNA FOR THE MEDICAL PLAN PORTION OF THE COVERAGE. MEDICARE PPO 100% PARTICIPANTS COVERED UNDER THE TRADITIONAL PLAN PRESCRIPTION DRUG COVERAGE WILL RECEIVE A SEPARATE BILL FROM PAYFLEX FOR THE TRADITIONAL PRESCRIPTION PLAN PORTION OF COVERAGE. THOSE BILLED RETIREES COVERED UNDER THE POS WITH DENTAL PLAN WILL RECEIVE A SEPARATE BILL FROM PAYFLEX FOR THE PRESCRIPTION AND DENTAL PORTION OF COVERAGE.

**(BILLED RETIREES) REMINDER:** THOSE BILLED RETIREES COVERED BY MEDICARE PPO 100% ($248.39 Per Person Per Month) WHO ELECT THE COUNTY OF ESSEX MEDICARE PDP ($92.59) OPTION WILL BE BILLED DIRECTLY BY AETNA FOR BOTH THE MEDICAL PLAN AND MEDICARE PDP PRESCRIPTION COVERAGE. THESE BILLS WILL BE SEPARATE INVOICES.

*[handwritten bottom section]*
Traditional Single   248.39 Med
+ 451.55 Rx Trad Rider
699.94
+ 5.00 fee
$ 704.94

Pos w/ dental
865.34 Med
17.18 Dental
150.87 Rx Rider
+ 5.00 fee
1,038.39

members with 10/25 Rx + 10/25/40

Eqwip   10/25 Rx
248.39
210.88
$ 458.77

10/25/40 Rx
248.39
+ 135.96
1,121.12 ?

# Exhibit B

**County of Essex**                                                      1-Nov

## Option 3 - All Plans Fully Insured
Fully Insured 2010 Medical and Prescription Plan Rates
Aetna

**INSURED MEDICAL:**                                                   Enrollment Total

| Aetna Insured 100/60 POS* | Tier | Enrollment | 2010 Rates* | 2010 Annual Premium | |
|---|---|---|---|---|---|
| **Active Employees** | Single | 702 | $444.68 | $3,745,984 | |
| (w/Dental rider) | P/Chn | 523 | $684.46 | $4,295,671 | |
| | H/W | 175 | $931.36 | $1,935,856 | |
| | Family | 473 | $1,119.24 | $6,352,806 | 1873 |
| **Gauer Retirees** | Single (w/o Medicare) | 16 | $444.68 | $85,379 | |
| **Medicare PFFS** | Single (w/Medicare) | 50 | $223.49 | $134,094 | |
| | P/Chn (w/o Medicare) | 6 | $684.48 | $49,281 | |
| | P/Chn (w/Medicare) | 5 | $868.17 | $40,090 | |
| | H/W (both w/o Medicare) | 8 | $931.36 | $89,411 | |
| | H/W (1 w/Medicare) | 14 | $668.17 | $112,253 | |
| **Medicare PFFS** | H/W (both w/Medicare) | 11 | $446.88 | $59,001 | |
| | Family (both w/o Medicare) | 0 | $1,119.24 | $0 | |
| | Family (1 w/Medicare) | 4 | $907.96 | $43,582 | |
| | Family (both w/Medicare) | 4 | $891.66 | $42,800 | 118 |
| **Retirees (not Gauer- Free)** | Single (w/o Medicare) | 50 | $444.68 | $266,808 | |
| **Medicare PFFS** | Single (w/Medicare) | 34 | $223.49 | $91,184 | |
| | P/Chn (w/o Medicare) | 6 | $684.48 | $49,281 | |
| | P/Chn (w/Medicare) | 2 | $668.17 | $16,036 | |
| | H/W (both w/o Medicare) | 29 | $931.36 | $324,113 | |
| | H/W (1 w/Medicare) | 21 | $668.17 | $168,379 | |
| **Medicare PFFS** | H/W (both w/Medicare) | 0 | $446.88 | $0 | |
| | Family (both w/o Medicare) | 28 | $1,119.24 | $376,065 | |
| | Family (1 w/Medicare) | 0 | $907.96 | $0 | |

08/31/2009                          www.aetna.com                          Page 1

**County of Essex**                                                                    1-Nov

## Option 3 – All Plans Fully Insured
**Fully Insured 2010 Medical and Prescription Plan Rates**
Aetna

| | Family (both w/Medicare) | 4 | $891.66 | $42,800 | 174 |
|---|---|---|---|---|---|
| Retirees (Billed and Pension) | Single (w/o Medicare) | 8 | $444.68 | $42,689 | |
| Medicare PFFS | Single (w/Medicare) | | $223.49 | $0 | |
| | P/Chn (w/o Medicare) | 1 | $684.48 | $8,214 | |
| | P/Chn (w/Medicare) | | $868.17 | $0 | |
| | H/W (both w/o Medicare) | 3 | $931.36 | $33,529 | |
| | H/W (1 w/Medicare) | | $668.17 | $0 | |
| Medicare PFFS | H/W (both w/Medicare) | | $446.98 | $0 | |
| | Family (both w/o Medicare) | 0 | $1,119.24 | $0 | |
| | Family (1 w/Medicare) | | $907.95 | $0 | |
| | Family (both w/Medicare) | | $891.66 | $0 | 12 |
| Chapter 375 Dep. (Active) | Single | 13 | $429.78 | $67,046 | |
| Chapter 375 Dep. (Retiree) | Single | 1 | $429.78 | $5,157 | 14 |
| **Annual Total** | | | | $18,497,506 | 2369 |

County of Essex

1-Nov

## Option 3 - All Plans Fully Insured
### Fully Insured 2010 Medical and Prescription Plan Rates
Aetna

| Aetna Traditional* | Tier | Enrollment | 2010 Rates | 2010 Annual Premium | |
|---|---|---|---|---|---|
| Active | Single | 207 | $660.92 | $1,641,725 | |
| | P/Chn | 16 | $1,221.15 | $234,461 | |
| | H/W | 87 | $1,416.40 | $1,478,722 | |
| | Family | 60 | $1,802.87 | $1,298,066 | 370 |
| Gauer Retirees | Single (w/o Medicare) | 36 | $660.92 | $285,517 | |
| Medicare PFFS | Single (w/Medicare) | 80 | $223.49 | $214,550 | |
| | P/Chn (w/o Medicare) | 1 | $1,221.15 | $14,654 | |
| | P/Chn (w/Medicare) | 0 | $884.41 | $0 | |
| | H/W (both w/o Medicare) | 32 | $1,416.40 | $543,898 | |
| | H/W (1 w/Medicare) | 22 | $884.41 | $233,484 | |
| Medicare PFFS | H/W (both w/Medicare) | 34 | $446.98 | $182,368 | |
| | Family (both w/o Medicare) | 4 | $1,802.87 | $86,538 | |
| | Family (1 w/Medicare) | 1 | $1,444.64 | $17,336 | |
| | Family (both w/Medicare) | 0 | $1,107.90 | $0 | |
| Retirees (Not Gauer- Free) | Single (w/o Medicare) | 3 | $660.92 | $23,793 | 210 |
| Medicare PFFS | Single (w/Medicare) | 0 | $223.49 | $0 | |
| | P/Chn (w/o Medicare) | 0 | $1,221.15 | $0 | |
| | P/Chn (w/Medicare) | 1 | $884.41 | $10,613 | |
| | H/W (both w/o Medicare) | 0 | $1,416.40 | $0 | |
| | H/W (1 w/Medicare) | 5 | $884.41 | $53,065 | |
| Medicare PFFS | H/W (both w/Medicare) | 0 | $446.98 | $0 | |
| | Family (both w/o Medicare) | 0 | $1,802.87 | $0 | |
| | Family (1 w/Medicare) | 0 | $1,444.64 | $0 | |
| | Family (both w/Medicare) | 0 | $1,107.90 | $0 | |
| Retirees (Billed and Pension) | Single (w/o Medicare) | 3 | $660.92 | $23,793 | 9 |
| Medicare PFFS | Single (w/Medicare) | 325 | $223.49 | $871,611 | |
| | P/Chn (w/o Medicare) | 0 | $1,221.15 | $0 | |

08/31/2009

www.aetna.com

Page 3

County of Essex                                                1-Nov

**Option 3 - All Plans Fully Insured**
**Fully Insured 2010 Medical and Prescription Plan Rates**
**Aetna**

| | | | | |
|---|---|---|---|---|
| | P/Chn (w/Medicare) | 1 | $884.41 | $10,613 |
| | H/W (both w/o Medicare) | | $1,416.40 | $0 |
| | H/W (1 w/Medicare) | 5 | $884.41 | $53,065 |
| Medicare PFFS | H/W (both w/Medicare) | 68 | $446.98 | $364,736 |
| | Family (both w/o Medicare) | | $1,802.87 | $0 |
| | Family (1 w/Medicare) | | $1,444.64 | $0 |
| | Family (both w/Medicare) | | $1,107.90 | $0 |
| Chapter 375( Dep) | Single | 0 | $646.02 | |
| Annual Total | | | | $7,642,607 |

402

991

County of Essex                                                1-Nov

## Option 3 - All Plans Fully Insured
### Fully Insured 2010 Medical and Prescription Plan Rates
#### Aetna

| Aetna POS* | 100/80 Plan Tier | Enrollment | 2010 Rates | 2010 Annual Premium | |
|---|---|---|---|---|---|
| Active | Single | 558 | $511.56 | $3,425,406 | |
| | P/Chn | 181 | $1,032.78 | $2,243,198 | |
| | H/W | 182 | $1,158.27 | $2,529,662 | |
| | Family | 406 | $1,504.15 | $7,328,219 | 1327 |
| Chapter 375 Dep. | Single | 23 | $496.67 | $137,081 | 23 |
| Retirees (All Free) | Single (w/o Medicare) | 128 | $511.56 | $785,756 | |
| Medicare PFFS | Single (w/Medicare) | 142 | $223.49 | $380,827 | |
| | P/Chn (w/o Medicare) | 27 | $1,032.78 | $334,621 | |
| | P/Chn (w/Medicare) | 1 | $735.05 | $8,821 | |
| | H/W (both w/o Medicare) | 129 | $1,158.27 | $1,793,002 | |
| | H/W (1 w/Medicare) | 65 | $735.05 | $573,339 | |
| Medicare PFFS | H/W (both w/Medicare) | 71 | $446.98 | $380,827 | |
| | Family (both w/o Medicare) | 90 | $1,504.15 | $1,624,482 | |
| | Family (1 w/Medicare) | 7 | $1,256.27 | $105,527 | |
| | Family (both w/Medicare) | 3 | $958.54 | $34,507 | 663 |
| Retirees (Billed and Pension) | Single (w/o Medicare) | 8 | $511.56 | $49,110 | |
| Medicare PFFS | Single (w/Medicare) | | $223.49 | $0 | |
| | P/Chn (w/o Medicare) | 0 | $1,032.78 | $0 | |
| | P/Chn (w/Medicare) | | $735.05 | $0 | |
| | H/W (both w/o Medicare) | 3 | $1,158.27 | $41,698 | |
| | H/W (1 w/Medicare) | | $735.05 | $0 | |
| Medicare PFFS | H/W (both w/Medicare) | | $446.98 | $0 | |
| | Family (both w/o Medicare) | 0 | $1,504.15 | $0 | |
| | Family (1 w/Medicare) | | $1,256.27 | $0 | |
| | Family (both w/Medicare) | | $958.54 | $0 | 11 |
| Annual Total | | | | $21,776,081 | 2024 |

Medicare PFFS(formerly Medicare Advantage)

08/31/2009                         www.aetna.com                         Page 5

**County of Essex**                                                        1-Nov

## Option 3 - All Plans Fully Insured
**Fully Insured 2010 Medical and Prescription Plan Rates**
**Aetna**

|  | Tier | Enrollment | 2010 Rates | 2010 Annual Premium |  |
|---|---|---|---|---|---|
| Retirees | NJ | 114 | $187.70 | $256,774 | 114 |

| Annual Total (Medical) |  |  |  | $45,172,969 | $5,438 |

### DENTAL PLANS - MANAGEMENT AND VOLUNTARY:

| Aetna Dental | Tier | Enrollment | 2010 Rates | 2010 Annual Premium |  |
|---|---|---|---|---|---|
| Management UCR Plan | Composite | 46 | $105.83 | $58,418 |  |
| Voluntary Dental PPO | Composite | 12 | $88.86 | $12,796 |  |
| Voluntary Dental HMO | Composite | 0 | $28.21 | $0 |  |
| Annual Total Dental |  |  |  | $71,214 | 58 |

| Total Medical and Dental |  |  |  | $45,244,183 |  |

# Exhibit C

**County of Essex**
**Gauer Retirees assumed in current plans (active rates)**                    2-Nov

## Option 3 – All Plans Fully Insured
**Fully Insured 2010 Medical and Prescription Plan Rates**
**Aetna**

**INSURED MEDICAL:**                                                            Enrollment Total

| Aetna Insured 100/60 POS* | Tier | Enrollment | 2010 Rates* | 2010 Annual Premium | |
|---|---|---|---|---|---|
| Active Employees | Single | 702 | $444.68 | $3,745,984 | |
| (w/Dental rider) | P/Chn | 523 | $684.46 | $4,295,671 | |
| | H/W | 175 | $931.36 | $1,955,856 | |
| | Family | 473 | $1,119.24 | $6,352,806 | 1873 |
| Gauer Retirees | Single (w/o Medicare) | 66 | $444.68 | $352,187 | |
| | P/Chn (w/o Medicare) | 11 | $684.46 | $90,349 | |
| | H/W (both w/o Medicare) | 33 | $931.36 | $368,819 | |
| | Family (both w/o Medicare) | 8 | $1,119.24 | $107,447 | 118 |
| Retirees (not Gauer~ Pres) | Single (w/o Medicare) | 50 | $444.68 | $266,808 | |
| Medicare PFFS | Single (w/Medicare) | 34 | $223.49 | $91,184 | |
| | P/Chn (w/o Medicare) | 6 | $684.46 | $49,281 | |
| | P/Chn (w/Medicare) | 2 | $668.17 | $16,036 | |
| | H/W (both w/o Medicare) | 29 | $931.36 | $324,113 | |
| | H/W (1 w/Medicare) | 21 | $668.17 | $168,379 | |
| Medicare PFFS | H/W (both w/Medicare) | 0 | $446.98 | $0 | |
| | Family (both w/o Medicare) | 28 | $1,119.24 | $376,065 | |
| | Family (1 w/Medicare) | 0 | $907.95 | $0 | |
| | Family (both w/Medicare) | 4 | $891.66 | $42,800 | 174 |
| Retirees (Billed and Pension) | Single (w/o Medicare) | 8 | $444.68 | $42,689 | |
| Medicare PFFS | Single (w/Medicare) | | $223.49 | $0 | |
| | P/Chn (w/o Medicare) | 1 | $684.46 | $8,214 | |
| | P/Chn (w/Medicare) | | $668.17 | $0 | |
| | H/W (both w/o Medicare) | 3 | $931.36 | $33,529 | |

**County of Essex**
Gguer Retirees assumed in current plans (active rates)

2-Nov

**Option 3 – All Plans Fully Insured**
**Fully Insured 2010 Medical and Prescription Plan Rates**
**Aetna**

|  |  |  |  |  |  |
|---|---|---|---|---|---|
|  | H/W (1 w/Medicare) |  | $888.17 | $0 |  |
| Medicare PFFS | H/W (both w/Medicare) |  | $446.98 | $0 |  |
|  | Family (both w/o Medicare) | 0 | $1,119.24 | $0 |  |
|  | Family (1 w/Medicare) |  | $807.95 | $0 |  |
|  | Family (both w/Medicare) |  | $891.66 | $0 | 12 |
| Chapter 375 Dep. (Active) | Single | 13 | $429.78 | $67,046 |  |
| Chapter 375 Dep. (Retiree) | Single | 1 | $429.78 | $5,157 | 14 |
| Annual Total |  |  |  | $18,760,419 | 2191 |

**County of Essex**                                                    2-Nov
Gauer Retirees assumed in current plans (active rates)

## Option 3 - All Plans Fully Insured
**Fully Insured 2010 Medical and Prescription Plan Rates**
Aetna

| Aetna Traditional* | Tier | Enrollment | 2010 Rates | 2010 Annual Premium | |
|---|---|---|---|---|---|
| Active | Single | 207 | $660.92 | $1,641,725 | |
| | P/Chn | 16 | $1,221.15 | $234,461 | |
| | H/W | 87 | $1,416.40 | $1,478,722 | |
| | Family | 60 | $1,802.87 | $1,298,066 | 370 |
| Gauer Retirees | Single (w/o Medicare) | 116 | $660.92 | $920,001 | |
| | P/Chn (w/o Medicare) | 1 | $1,221.15 | $14,654 | |
| | H/W (both w/o Medicare) | 88 | $1,416.40 | $1,495,718 | |
| | Family (both w/o Medicare) | 5 | $1,802.87 | $108,172 | 210 |
| Retirees (Not Gauer- Free) | Single (w/o Medicare) | 3 | $660.92 | $23,793 | |
| Medicare PFFS | Single (w/Medicare) | 0 | $223.49 | $0 | |
| | P/Chn (w/o Medicare) | 0 | $1,221.15 | $0 | |
| | P/Chn (w/Medicare) | 1 | $884.41 | $10,613 | |
| | H/W (both w/o Medicare) | 0 | $1,416.40 | $0 | |
| | H/W (1 w/Medicare) | 5 | $884.41 | $53,065 | |
| Medicare PFFS | H/W (both w/Medicare) | 0 | $446.98 | $0 | |
| | Family (both w/o Medicare) | 0 | $1,802.87 | $0 | |
| | Family (1 w/Medicare) | 0 | $1,444.84 | $0 | |
| | Family (both w/Medicare) | 0 | $1,107.80 | $0 | 9 |
| Retirees (Billed and Pension) | Single (w/o Medicare) | 3 | $660.92 | $23,793 | |
| Medicare PFFS | Single (w/Medicare) | 325 | $223.49 | $871,611 | |
| | P/Chn (w/o Medicare) | 0 | $1,221.15 | $0 | |
| | P/Chn (w/Medicare) | 1 | $884.41 | $10,613 | |
| | H/W (both w/o Medicare) | | $1,416.40 | $0 | |
| | H/W (1 w/Medicare) | 5 | $884.41 | $53,065 | |
| Medicare PFFS | H/W (both w/Medicare) | 68 | $446.98 | $364,736 | |
| | Family (both w/o Medicare) | | $1,802.87 | $0 | |
| | Family (1 w/Medicare) | | $1,444.84 | $0 | |

**County of Essex**                                    2-Nov
Gauer Retirees assumed in current plans (active rates)

### Option 3 - All Plans Fully Insured
**Fully Insured 2010 Medical and Prescription Plan Rates**
**Aetna**

|  | Family (both w/Medicare) |  | $1,107.90 | $0 | 402 |
|---|---|---|---|---|---|
| Chapter 375(Dep) | Single | 0 | $846.02 |  |  |
| **Annual Total** |  |  |  | $8,602,697 | 991 |

County of Essex
Gauer Retirees assumed in current plans (active rates)                     2-Nov

**Option 3 - All Plans Fully Insured**
**Fully Insured 2010 Medical and Prescription Plan Rates**
**Aetna**

| Aetna POS* | 100/80 Plan Tier | Enrollment | 2010 Rates | 2010 Annual Premium | |
|---|---|---|---|---|---|
| Active | Single | 558 | $511.56 | $3,425,406 | |
| | P/Chn | 181 | $1,032.78 | $2,243,198 | |
| | H/W | 182 | $1,158.27 | $2,529,662 | |
| | Family | 406 | $1,504.15 | $7,328,219 | 1327 |
| Chapter 375 Dep. | Single | 23 | $496.67 | $137,081 | 23 |
| Retirees (All Free) | Single (w/o Medicare) | 128 | $511.56 | $785,756 | |
| Medicare PFFS | Single (w/Medicare) | 142 | $223.49 | $380,827 | |
| | P/Chn (w/o Medicare) | 27 | $1,032.78 | $334,621 | |
| | P/Chn (w/Medicare) | 1 | $735.05 | $8,821 | |
| | H/W (both w/o Medicare) | 129 | $1,158.27 | $1,793,002 | |
| | H/W (1 w/Medicare) | 65 | $735.05 | $573,339 | |
| Medicare PFFS | H/W (both w/Medicare) | 71 | $446.98 | $380,827 | |
| | Family (both w/o Medicare) | 90 | $1,504.15 | $1,624,482 | |
| | Family (1 w/Medicare) | 7 | $1,256.27 | $105,527 | |
| | Family (both w/Medicare) | 3 | $958.54 | $34,507 | 663 |
| Retirees (Billed and Pension) | Single (w/o Medicare) | 8 | $511.56 | $49,110 | |
| Medicare PFFS | Single (w/Medicare) | | $223.49 | $0 | |
| | P/Chn (w/o Medicare) | 0 | $1,032.78 | $0 | |
| | P/Chn (w/Medicare) | | $735.05 | $0 | |
| | H/W (both w/o Medicare) | 3 | $1,158.27 | $41,698 | |
| | H/W (1 w/Medicare) | | $735.05 | $0 | |
| Medicare PFFS | H/W (both w/Medicare) | | $446.98 | $0 | |
| | Family (both w/o Medicare) | 0 | $1,504.15 | $0 | |
| | Family (1 w/Medicare) | | $1,256.27 | $0 | |
| | Family (both w/Medicare) | | $958.54 | $0 | 11 |
| Annual Total | | | | $21,776,081 | 2024 |

Medicare PFFS(formerly Medicare Advantage)

County of Essex                                                    2-Nov
Gauer Retirees assumed in current plans (active rates)

Option 3 - All Plans Fully Insured
Fully Insured 2010 Medical and Prescription Plan Rates
Aetna

|  | Tier | Enrollment | 2010 Rates | 2010 Annual Premium |  |
|---|---|---|---|---|---|
| Retirees | NJ | 114 | 187.7 | $256,774 | 114 |

| Annual Total (Medical) | | | | $49,396,081 | $3,320 |

DENTAL PLANS - MANAGEMENT AND VOLUNTARY:

| Aetna Dental | Tier | Enrollment | 2010 Rates | 2010 Annual Premium |  |
|---|---|---|---|---|---|
| Management UCR Plan | Composite | 46 | $105.83 | $58,418 | |
| Voluntary Dental PPO | Composite | 12 | $88.86 | $12,796 | |
| Voluntary Dental HMO | Composite | 0 | $28.21 | $0 | |
| Annual Total Dental | | | | $71,214 | 58 |

| Total Medical and Dental | | $49,467,295 |
|---|---|---|

**Appendix XII-B1**

|  | CIVIL CASE INFORMATION STATEMENT (CIS)<br><br>Use for initial Law Division<br>Civil Part pleadings (not motions) under *Rule* 4:5-1<br>Pleading will be rejected for filing, under *Rule* 1:5-6(c),<br>if information above the black bar is not completed<br>or attorney's signature is not affixed | FOR USE BY CLERK'S OFFICE ONLY |
|---|---|---|

| | | FOR USE BY CLERK'S OFFICE ONLY |
|---|---|---|
| | | PAYMENT TYPE:  ☐ CK  ☐ CG  ☐ CA |
| | | CHG/CK NO. |
| | | AMOUNT: |
| | | OVERPAYMENT: |
| | | BATCH NUMBER: |

| ATTORNEY / PRO SE NAME<br>Thomas A. Abbate, Esq. | TELEPHONE NUMBER<br>(201) 907-5294 | COUNTY OF VENUE<br>Essex |
|---|---|---|
| FIRM NAME (If applicable)<br>DeCotiis, FitzPatrick, Cole & Giblin, LLP | | DOCKET NUMBER (when available) |
| OFFICE ADDRESS<br>Glenpointe Centre West<br>500 Frank W. Burr Boulevard<br>Teaneck, NJ 07666 | | DOCUMENT TYPE<br>Complaint |
| | | JURY DEMAND   ☑ YES   ☐ No |

| NAME OF PARTY (e.g., John Doe, Plaintiff)<br>County of Essex and the Essex<br>County Board of Chosen Freeholders | CAPTION<br>County of Essex, et al v. Aetna Inc., et al |
|---|---|

| CASE TYPE NUMBER<br>(See reverse side for listing)<br><br>508 | HURRICANE SANDY RELATED?<br>☐ YES   ☑ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE?   ☐ YES   ☑ NO<br>IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
|---|---|---|
| RELATED CASES PENDING?<br>☐ YES   ☑ No | | IF YES, LIST DOCKET NUMBERS |
| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)?<br>☐ YES   ☑ No | | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)<br>☐ NONE<br>☐ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?<br>☐ YES   ☑ No | IF YES, IS THAT RELATIONSHIP:<br>☐ EMPLOYER/EMPLOYEE        ☐ FRIEND/NEIGHBOR   ☐ OTHER (explain)<br>☐ FAMILIAL                       ☐ BUSINESS |
|---|---|

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?   ☐ YES   ☑ No |
|---|

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

| ♿ | DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?<br>☐ YES   ☑ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|---|
| | WILL AN INTERPRETER BE NEEDED?<br>☐ YES   ☑ No | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE:



**Side 2**

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
### Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I  -  150 days' discovery**
- 151  NAME CHANGE
- 175  FORFEITURE
- 302  TENANCY
- 399  REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
- 502  BOOK ACCOUNT (debt collection matters only)
- 505  OTHER INSURANCE CLAIM (including declaratory judgment actions)
- 506  PIP COVERAGE
- 510  UM or UIM CLAIM (coverage issues only)
- 511  ACTION ON NEGOTIABLE INSTRUMENT
- 512  LEMON LAW
- 801  SUMMARY ACTION
- 802  OPEN PUBLIC RECORDS ACT (summary action)
- 999  OTHER (briefly describe nature of action)

**Track II  -  300 days' discovery**
- 305  CONSTRUCTION
- 509  EMPLOYMENT (other than CEPA or LAD)
- 599  CONTRACT/COMMERCIAL TRANSACTION
- 603N AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
- 603Y AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
- 605  PERSONAL INJURY
- 610  AUTO NEGLIGENCE – PROPERTY DAMAGE
- 621  UM or UIM CLAIM (includes bodily injury)
- 699  TORT – OTHER

**Track III  -  450 days' discovery**
- 005  CIVIL RIGHTS
- 301  CONDEMNATION
- 602  ASSAULT AND BATTERY
- 604  MEDICAL MALPRACTICE
- 606  PRODUCT LIABILITY
- 607  PROFESSIONAL MALPRACTICE
- 608  TOXIC TORT
- 609  DEFAMATION
- 616  WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
- 617  INVERSE CONDEMNATION
- 618  LAW AGAINST DISCRIMINATION (LAD) CASES

**Track IV  -  Active Case Management by Individual Judge / 450 days' discovery**
- 156  ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
- 303  MT. LAUREL
- 508  COMPLEX COMMERCIAL
- 513  COMPLEX CONSTRUCTION
- 514  INSURANCE FRAUD
- 620  FALSE CLAIMS ACT
- 701  ACTIONS IN LIEU OF PREROGATIVE WRITS

**Multicounty Litigation (Track IV)**

| | | | |
|---|---|---|---|
| 271 | ACCUTANE/ISOTRETINOIN | 282 | PELVIC MESH/BARD |
| 274 | RISPERDAL/SEROQUEL/ZYPREXA | 283 | DEPUY ASR HIP IMPLANT LITIGATION |
| 281 | BRISTOL-MYERS SQUIBB ENVIRONMENTAL | 285 | ALLODERM REGENERATIVE TISSUE MATRIX |
| 282 | FOSAMAX | 296 | STRYKER REJUVENATE/ABG II MODULAR HIP STEM COMPONENTS |
| 285 | STRYKER TRIDENT HIP IMPLANTS | 297 | MIRENA CONTRACEPTIVE DEVICE |
| 286 | LEVAQUIN | 299 | OLMESARTAN MEDOXOMIL MEDICATIONS/BENICAR |
| 287 | YAZ/YASMIN/OCELLA | 300 | TALC-BASED BODY POWDERS |
| 288 | REGLAN | 601 | ASBESTOS |
| 290 | POMPTON LAKES ENVIRONMENTAL LITIGATION | 623 | PROPECIA |
| 291 | PELVIC MESH/GYNECARE | 624 | STRYKER LFIT CoCr V40 FEMORAL HEADS |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics."

### Please check off each applicable category ☐ Putative Class Action        ☐ Title 59

**Appendix XII-B1**

<table>
<tr>
<td rowspan="2"></td>
<td rowspan="2">

## CIVIL CASE INFORMATION STATEMENT
### (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),**
**if information above the black bar is not completed**
**or attorney's signature is not affixed**

</td>
<td>

SUPERIOR COURT OF NEW JERSEY
FOR USE BY CLERK'S OFFICE ONLY
PAYMENT TYPE: ☐CK ☐CG ☐CA
CHG/CK NO.
2017 NOV -6 P 2:30
AMOUNT:
FINANCE DIVISION
OVERPAYMENT: FILED
BATCH NUMBER:

</td>
</tr>
</table>

| ATTORNEY / PRO SE NAME <br> Thomas A. Abbate, Esq. | TELEPHONE NUMBER <br> (201) 907-5294 | COUNTY OF VENUE <br> Essex |
|---|---|---|
| FIRM NAME (if applicable) <br> DeCotiis, FitzPatrick, Cole & Giblin, LLP | | DOCKET NUMBER (when available) <br> L 1823-17 |
| OFFICE ADDRESS <br> Glenpointe Centre West <br> 500 Frank W. Burr Boulevard <br> Teaneck, NJ 07666 | | DOCUMENT TYPE <br> Complaint |
| | | JURY DEMAND   ■ YES   ☐ NO |

| NAME OF PARTY (e.g., John Doe, Plaintiff) <br> County of Essex and the Essex <br> County Board of Chosen Freeholders | CAPTION <br> County of Essex, et al v. Aetna Inc., et al |
|---|---|

| CASE TYPE NUMBER <br> (See reverse side for listing) <br> 508 | HURRICANE SANDY <br> RELATED? <br> ☐ YES   ■ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE?   ☐ YES   ■ NO <br><br> IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW <br> REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
|---|---|---|
| RELATED CASES PENDING? <br> ☐ YES   ■ No | | IF YES, LIST DOCKET NUMBERS |
| DO YOU ANTICIPATE ADDING ANY PARTIES <br> (arising out of same transaction or occurrence)? <br> ☐ YES   ■ No | | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)   ☐ NONE   ☐ UNKNOWN |

THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.

| CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION | | |
|---|---|---|
| DO PARTIES HAVE A CURRENT, PAST OR <br> RECURRENT RELATIONSHIP? <br> ☐ YES   ■ No | IF YES, IS THAT RELATIONSHIP: <br> ☐ EMPLOYER/EMPLOYEE <br> ☐ FAMILIAL | ☐ FRIEND/NEIGHBOR   ☐ OTHER (explain) <br> ☐ BUSINESS |

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?   ☐ YES   ■ No |
|---|

| USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR <br> ACCELERATED DISPOSITION |
|---|

| ♿ | DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS? <br> ☐ YES   ■ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|---|
| | WILL AN INTERPRETER BE NEEDED? <br> ☐ YES   ■ No | IF YES, FOR WHAT LANGUAGE? |

| I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be <br> redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b). |
|---|
| ATTORNEY SIGNATURE |



**Side 2**

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

## CASE TYPES (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I - 150 days' discovery**
151   NAME CHANGE
175   FORFEITURE
302   TENANCY
399   REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
502   BOOK ACCOUNT (debt collection matters only)
505   OTHER INSURANCE CLAIM (including declaratory judgment actions)
506   PIP COVERAGE
510   UM or UIM CLAIM (coverage issues only)
511   ACTION ON NEGOTIABLE INSTRUMENT
512   LEMON LAW
801   SUMMARY ACTION
802   OPEN PUBLIC RECORDS ACT (summary action)
999   OTHER (briefly describe nature of action)

**Track II - 300 days' discovery**
305   CONSTRUCTION
509   EMPLOYMENT (other than CEPA or LAD)
599   CONTRACT/COMMERCIAL TRANSACTION
603N  AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
603Y  AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
605   PERSONAL INJURY
610   AUTO NEGLIGENCE – PROPERTY DAMAGE
621   UM or UIM CLAIM (includes bodily injury)
699   TORT – OTHER

**Track III - 450 days' discovery**
005   CIVIL RIGHTS
301   CONDEMNATION
602   ASSAULT AND BATTERY
604   MEDICAL MALPRACTICE
606   PRODUCT LIABILITY
607   PROFESSIONAL MALPRACTICE
608   TOXIC TORT
609   DEFAMATION
616   WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
617   INVERSE CONDEMNATION
618   LAW AGAINST DISCRIMINATION (LAD) CASES

**Track IV - Active Case Management by Individual Judge / 450 days' discovery**
156   ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
303   MT. LAUREL
508   COMPLEX COMMERCIAL
513   COMPLEX CONSTRUCTION
514   INSURANCE FRAUD
620   FALSE CLAIMS ACT
701   ACTIONS IN LIEU OF PREROGATIVE WRITS

**Multicounty Litigation (Track IV)**

| | | | |
|---|---|---|---|
| 271 | ACCUTANE/ISOTRETINOIN | 292 | PELVIC MESH/BARD |
| 274 | RISPERDAL/SEROQUEL/ZYPREXA | 293 | DEPUY ASR HIP IMPLANT LITIGATION |
| 281 | BRISTOL-MYERS SQUIBB ENVIRONMENTAL | 295 | ALLODERM REGENERATIVE TISSUE MATRIX |
| 282 | FOSAMAX | 296 | STRYKER REJUVENATE/ABG II MODULAR HIP STEM COMPONENTS |
| 285 | STRYKER TRIDENT HIP IMPLANTS | 297 | MIRENA CONTRACEPTIVE DEVICE |
| 286 | LEVAQUIN | 299 | OLMESARTAN MEDOXOMIL MEDICATIONS/BENICAR |
| 287 | YAZ/YASMIN/OCELLA | 300 | TALC-BASED BODY POWDERS |
| 289 | REGLAN | 601 | ASBESTOS |
| 290 | POMPTON LAKES ENVIRONMENTAL LITIGATION | 623 | PROPECIA |
| 291 | PELVIC MESH/GYNECARE | 624 | STRYKER LFIT CoCr V40 FEMORAL HEADS |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics.

### Please check off each applicable category   ☐ Putative Class Action      ☐ Title 59

```
ESSEX COUNTY - CIVIL DIVISION
SUPERIOR COURT OF NJ
465 MARTIN LUTHER KING JR BLVD
NEWARK          NJ 07102
                                        TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (973) 776-9300
COURT HOURS  8:30 AM - 4:30 PM

                        DATE:   NOVEMBER 08, 2017
                        RE:     COUNTY OF ESSEX VS AETNA INC
                        DOCKET: ESX L -007823 17
```

THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 4.

DISCOVERY IS PRESUMPTIVELY 450 DAYS BUT MAY BE ENLARGED OR SHORTENED BY THE
JUDGE AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST
DEFENDANT, WHICHEVER COMES FIRST.

THE MANAGING JUDGE ASSIGNED IS:  HON STEPHANIE A. MITTERHOFF

IF YOU HAVE ANY QUESTIONS, CONTACT TEAM    002
AT:  (973) 776-9300.

IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                        ATTENTION:

                        ATT: THOMAS A. ABBATE
                        DE COTIIS FITZPATRICK COLE & G
                        GLENPOINTE CENTRE WEST
                        500 FRANK W BURR BLVD
                        TEANECK         NJ 07666

JUMJB3
```