NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

COUNTY OF ESSEX and THE ESSEX COUNTY
BOARD OF CHOSEN FREEHOLDERS,

       Plaintiffs,

v.

AETNA INC., AETNA LIFE INSURANCE
COMPANY, INC., ABC CORPS. 1-100, and JOHN
DOES 1-100,

       Defendants.

OPINION
Civ. No. 17-13663

**Walls, Senior District Judge**

  Defendants Aetna Inc. and Aetna Life Insurance Company, Inc. (collectively, "Aetna") move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). ECF No. 14. Plaintiffs County of Essex and the Essex County Board of Chosen Freeholders (collectively, the "County") oppose Aetna's motion and also move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). ECF Nos. 20, 20-1. Decided without oral argument under Federal Rule of Civil Procedure 78, Aetna's motion is granted in part and denied in part; the County's motion is denied.

## PROCEDURAL HISTORY

  This matter involves the payment of premiums for employer-sponsored health insurance. The County contracted with Aetna to provide several health insurance plans to County employees and retirees from 2010 through 2016. ECF No. 1-2 (Compl.) ¶ 6; ECF No. 7 (Answ.) ¶ 6. Aetna charged the County $660.92 per person per month for a certain subset of retired County employees, but the County alleges that the parties' contract only allowed a $223.49 per

1

person per month charge. Compl. ¶¶ 51, 57. Aetna retorts that their contract explicitly contemplates the $660.92 per person per month rate. Answ. ¶¶ 91, 94.

The County began this case in New Jersey Superior Court on November 6, 2017, bringing eight claims against Aetna:

1. Count 1: Breach of Contract;
2. Count 2: Breach of the Implied Covenant of Good Faith and Fair Dealing;
3. Count 3: Reformation of Written Contract Due to Mutual Mistake;
4. Count 4: Promissory Estoppel;
5. Count 5: Negligent Misrepresentation;
6. Count 6: Fraud/Fraud in the Inducement/Equitable Fraud;
7. Count 7: Fraudulent Concealment or Misrepresentation; and
8. Count 8: Unjust Enrichment.

*See* Compl. Aetna removed the action to this Court on December 27, 2017, *see* ECF No. 1, and answered the Complaint on January 17, 2018, *see* Answ. Both parties have moved for judgment on the pleadings. ECF Nos. 14, 20.

## FACTUAL BACKGROUND

The County contracted with Aetna from 2010 to 2016 (the "Relevant Period") to provide employer-sponsored health benefits to the County's then-current and retired employees. Compl. ¶ 6; Answ. ¶ 6. This followed a public procurement process, which specified that any discrepancy between a provider's proposal and the ultimate contract "shall be resolved in favor of the County of Essex." Compl. ¶ 12; Answ. ¶ 12. Aetna's proposal featured several plan options, including some specifically aimed at "retirees over 65." Compl. ¶¶ 7-9; Answ. ¶¶ 7-9.

The County claims that the plans for retirees over 65 years of age contributed to it selecting Aetna as the County's health coverage provider. Compl. ¶ 10.

Aetna began providing health coverage for County employees and retirees on January 1, 2010. Compl. ¶ 13; Answ. ¶ 13. The County approved annually contracts for Aetna to provide similar plans each calendar year during the Relevant Period. Compl. ¶¶ 15-16; Answ. ¶¶ 15-16. The parties agree that they entered into valid contracts each year during the Relevant Period. Compl. ¶ 80; Answ. ¶ 80. But as discussed in greater detail below, they disagree regarding the scope of those contracts.

Among Aetna's health coverage offerings during the Relevant Period was a Medicare Private Fee for Service ("MPFFS") Plan—later known as the Medicare Advantage Plan—which was available to the County's Medicare-eligible retirees. Compl. ¶ 14; Answ. ¶ 14. Once an employee or retiree reached the age of 65, he became eligible to first receive Medicare insurance benefits from the federal government before invoking any private health insurance on a secondary basis. Compl. ¶ 40; Answ. ¶ 40. Under the Medicare Advantage program, Aetna worked with the federal government to package Medicare and Aetna's private health insurance; Aetna would administer the claims process, collect millions of dollars in reimbursements directly from Medicare, and then remit claims payments to health care providers consistent with Aetna's negotiated rates. Compl. ¶¶ 45-46; Answ. ¶¶ 45-46. As a result of this subsidy, the Medicare Advantage Plan was cheaper than Aetna's traditional indemnity plan. Compl. ¶ 51; Answ. ¶ 51.

The New Jersey Supreme Court, in *Gauer v. Essex Cty. Div. of Welfare*, 108 N.J. 140 (1987), had earlier required the County to continue paying for traditional indemnity health insurance for certain then-current and former employees, who during the Relevant Period were mostly retired. Compl. ¶¶ 31-32; Answ. ¶¶ 31-32. The parties refer to these retired beneficiaries

as "Gauer retirees." *See* Compl. ¶ 33; Answ. ¶ 33. The *Gauer* decision entitled the Gauer retirees to enroll in any insurance plan offered by the County, regardless whether a particular plan is intended for retirees or active employees. Compl. ¶ 35; Answ. ¶ 35. Indeed, under Aetna's contract with the County the Gauer retirees were permitted to enroll in either the MPFFS Plan or a "Traditional" plan for active, non-Medicare employees. Compl. ¶ 52; Answ. ¶ 52.

Whether a Gauer retiree enrolled in a Medicare or non-Medicare plan is crucial because Aetna charged the County different prices based on whether a plan covered primarily Medicare-eligible employees and retirees. In 2010, for example, Aetna charged the County $660.92 per month for each person enrolled in its traditional indemnity (non-Medicare) plan. Compl. ¶ 36; Answ. ¶ 36. Each employee or retiree enrolled in a Medicare plan cost the County $223.49 per month. Compl. ¶ 51; Answ. ¶ 51. The parties' dispute arises from how Aetna handled *Medicare-eligible* Gauer retirees who, as permitted by Supreme Court precedent, enrolled in a *non-Medicare* plan.

Aetna charged the County the higher, $660.92 per month rate for these Gauer retirees in the non-Medicare plans. Compl. ¶ 51; Answ. ¶ 51. But the County alleges that it understood that Aetna would charge the lower, $223.49 per month rate for these Medicare-eligible individuals. Compl. ¶ 57. Aetna denies that the higher rate was intended to apply only to non-Medicare eligible Gauer retirees. Answ. ¶ 57.

Each year, Aetna provided the County with <u>rate sheets</u> showing the rates Aetna would charge for certain plans in a particular policy year. Compl. ¶ 62; Answ. ¶ 62; *see also* Compl. Ex. A (2010-2016 rate sheets). These rate sheets did not mention Gauer retirees:

| COVERAGE | AETNA | | | MEDICARE PFFS (w/ Prescription) | MEDICARE ADVANTAGE PPO (with Prescription) |
|---|---|---|---|---|---|
| | TRADITIONAL (with Prescription) | POS CHOICE 100/80 | POS W/ RX AND DENTAL 100/80 | | |
| **SINGLE** | | | | | per eligible person |
| w/o Medicare | $ 685.92 | $ 516.56 | $ 449.69 | | |
| w/ Medicare | | | | $ 228.49 | $ 187.70 |
| **Parent & Child** | | | | | |
| Both w/o Medicare | $ 1,226.15 | $ 1,037.78 | $ 889.46 | | |
| 1 w/ Medicare | $ 889.41 | $ 740.06 | $ 673.17 | | |
| **Husband & Wife** | | | | | per eligible person |
| Both w/o Medicare | $ 1,421.40 | $ 1,163.27 | $ 936.38 | | |
| 1 w/ Medicare | $ 889.41 | $ 740.06 | $ 673.17 | | |
| Both w/ Medicare | | | | $ 451.98 | $ 187.70 |
| **Family** | | | | | |
| Both w/o Medicare | $ 1,807.87 | $ 1,509.15 | $ 1,124.24 | | |
| 1 w/ Medicare | $ 1,449.84 | $ 1,261.27 | $ 912.95 | | |
| Both w/ Medicare | $ 1,112.90 | $ 963.64 | $ 896.66 | | |

Note: The above plan rates applies only to retirees who are not entitled to free health insurance and are eligible and participating in the County of Essex Group Health Plans. *Medicare PFFS excludes Prescription for retirees who are enrolled in POS Choice in 2009.

Effective Jan. 1, 2010

Compl. Ex. A at 1. Aetna also sent the County rate charts showing the rates and enrollment for each offered plan. Compl. ¶¶ 66-67; Answ. ¶¶ 66-67; *see also* Compl. Ex. C (2010 rate charts). The 2010 rate chart *does* mention Gauer retirees:

5

**County of Essex**         2-Nov
Gauer Retirees assumed in current plans (active rates)

Option 3 - All Plans Fully Insured
Fully Insured 2010 Medical and Prescription Plan Rates
Aetna

| Aetna Traditional* | Tier | Enrollment | 2010 Rates | 2010 Annual Premium |
|---|---|---|---|---|
| Active | Single | 207 | $660.92 | $1,641,725 |
|  | P/Chn | 16 | $1,221.15 | $234,461 |
|  | H/W | 87 | $1,416.40 | $1,478,722 |
|  | Family | 60 | $1,802.87 | $1,298,066 |
| Gauer Retirees | Single (w/o Medicare) | 116 | $660.92 | $920,001 |
|  | P/Chn (w/o Medicare) | 1 | $1,221.15 | $14,654 |
|  | H/W (both w/o Medicare) | 88 | $1,416.40 | $1,495,718 |
|  | Family (both w/o Medicare) | 5 | $1,802.87 | $108,172 |
| Retirees (Not Gauer- Prec) | Single (w/o Medicare) | 3 | $660.92 | $23,793 |
| Medicare PFFS | Single (w/Medicare) | 0 | $223.49 | $0 |
|  | P/Chn (w/o Medicare) | 0 | $1,221.15 | $0 |
|  | P/Chn (w/Medicare) | 1 | $884.41 | $10,613 |
|  | H/W (both w/o Medicare) | 0 | $1,416.40 | $0 |
|  | H/W (1 w/Medicare) | 5 | $884.41 | $53,065 |
| Medicare PFFS | H/W (both w/Medicare) | 0 | $448.93 | $0 |
|  | Family (both w/o Medicare) | 0 | $1,802.87 | $0 |
|  | Family (1 w/Medicare) | 0 | $1,444.84 | $0 |
|  | Family (both w/Medicare) | 0 | $1,107.80 | $0 |

Compl. Ex. C at 3. The County states that the rate <u>charts</u> were sent before the rate <u>sheets</u>, Compl. ¶ 66; Aetna denies this but does not explain its understanding of the timing, Answ. ¶ 66.

## STANDARD OF REVIEW

A motion under Rule 12(c) is decided under the same standards applicable to a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Turbe v. Gov't of Virgin Islands*, 938

6

F.2d 427, 428 (3d Cir. 1991).

Judgment on the pleadings "will only be granted where the moving party clearly establishes there are no material issues of fact, and that he or she is entitled to judgment as a matter of law." *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 259 (3d Cir. 2008). "In considering a motion for judgment on the pleadings, a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." *Zimmerman v. Corbett*, 873 F.3d 414, 417-18 (3d Cir. 2017), *cert. denied*, 138 S. Ct. 2623 (2018). "Although a moving party, for purposes of the Rule 12(c) motion, concedes the accuracy of the factual allegations in his adversary's pleading, he does not admit other assertions in the opposing party's pleading that constitute conclusions of law, legally impossible facts, or matters that would not be admissible in evidence at trial." Wright & Miller, *Fed. Prac. & Proc.* § 1368 (3d ed. 2018).

A plaintiff "may not secure a judgment on the pleadings when the [defendant's] answer raises issues of fact that, if proved, would defeat recovery." *Id.* Similarly, a defendant's Rule 12(c) motion must be denied "if there are allegations in the plaintiff's pleadings that, if proved, would permit recovery on his claim." *Id.*

## DISCUSSION

### 1. The County's Contract Claims (Counts 1 Through 4)

The County brings four contract claims: Count 1, Breach of Contract; Count 2, Breach of the Implied Covenant of Good Faith and Fair Dealing; Count 3, Reformation of Written Contract Due to Mutual Mistake; and Count 4, Promissory Estoppel. Compl. ¶¶ 78-124.

### a. *Count 1: Breach of Contract*

A breach of contract claim is sufficiently plead if a claimant alleges "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). The parties agree that they entered into a valid contract each year during the Relevant Period. *See* Compl. ¶¶ 6, 13, 80; Answ. ¶¶ 6, 13, 80; ECF No. 14-3 (Aetna Mot.) at 9 ("The parties agree the County would pay monthly health insurance premiums to be billed by Aetna in accordance with the premiums set forth in the rate sheets."); ECF No. 20-1 (County Mot. and Opp.) at 10 ("There is no dispute that valid contracts existed between the parties."). Aetna does not dispute that the County performed its obligations under those contracts. If Aetna did indeed breach its contract with the County by charging impermissibly high rates, then the County was necessarily damaged by paying excess premiums for health coverage. *See* Compl. ¶ 119. The only disputed element, then, is breach.

The County claims that Aetna breached the parties' contracts by agreeing to charge $223.49 per person per month for Gauer retirees on non-Medicare plans—a rate that it claims is memorialized in the rate sheets—but instead charging the County $660.92 per person per month (the non-Medicare rate) for the same individuals. *See* Compl. ¶¶ 51, 92-94. Aetna admits charging the higher rate for Gauer retirees on non-Medicare plans, but disputes that it ever agreed to charge the County the lower rate for these former employees. Answ. ¶¶ 51, 92-94. Indeed, Aetna argues that (1) the rate sheets contemplate a single rate for all retirees (Gauer or otherwise) in Aetna's Traditional non-Medicare plan because the rate sheets do not differentiate between the two types of former employees, Aetna Mot. at 10-12; and (2) the rate charts bear out this arrangement by showing a rate of $660.92 per person per month for Gauer retirees in that

plan, *id.* at 13-14. The County disagrees, responding that (1) the rate sheets' "w/ Medicare" row shows that Aetna would charge a lower rate for Medicare-eligible retirees, County Mot. and Opp. at 10-12; and (2) the rate charts were "prior document[s]" ultimately "memorialized in the sheet[s]," and accordingly "have no evidentiary value," *id.* at 15-16. Aetna disputes the County's characterization of the rate sheets. *See* ECF No. 21 (Aetna Opp. and Reply) at 4-6 ("Exhibit C thus expands on Exhibit A upon which the County exclusively relies.").

Two ambiguities in the factual record prevent the Court from granting judgment on the breach of contract claim to either party. First, the rate sheets, Compl. Ex. A, do not unambiguously support either party. In Aetna's favor, the rate sheets show a single rate for all single retirees enrolled in the Traditional (non-Medicare) plan: $665.92 per person per month. *Id.* at 1. But that same rate sheet lists rates of $228.49 per person per month (or lower) for retirees "w/ Medicare." *Id.* The problem for both parties is that no rate sheet includes a rate for the type of retiree at issue here: *with* Medicare yet on the Traditional plan. *See* Compl. ¶ 94; Answ. ¶ 94. Indeed, the box showing rates for the Traditional plan lists a rate for retirees "w/o Medicare" but includes *no rate* for those "w/ Medicare":

| COVERAGE | TRADITIONAL (with Prescription) |
|---|---|
| SINGLE<br>w/o Medicare<br>w/ Medicare | $ 665.92 |

Compl. Ex. A at 1. The parties simply omitted the relevant term—the rate charged to *Medicare-eligible* retirees enrolled in Aetna's Traditional plan. When interpreting a vague or missing contract term, New Jersey courts "will look to, among other things, all the relevant circumstances surrounding the transaction, as well as evidence of the parties' course of dealing,

usage and course of performance." *Elliott & Frantz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 328 (3d Cir. 2006); *see also Twp. of White v. Castle Ridge Dev. Corp.*, 419 N.J. Super. 68, 76-77 (App. Div. 2011) ("In construing vague or ambiguous provisions of a contract, our courts will imply a reasonable missing term or, if necessary, will receive evidence to provide a basis for such an implication."). This Court cannot consider any of those circumstances absent discovery, so judgment for either party is premature.[1]

Likewise, because the parties disagree as to the import of the rate charts, this second question of material fact precludes judgment for motion on the pleadings. As discussed, Aetna contends that the rate charts are an operative part of the contract, while the County maintains that they are preliminary documents that were superseded by the rate sheets. The Court cannot resolve this factual dispute at the Rule 12(c) stage. Both motions for judgment on the pleadings regarding Count 1 are denied.[2]

b. *Count 2: Breach of the Implied Covenant of Good Faith and Fair Dealing*

"[E]very contract in New Jersey contains an implied covenant of good faith and fair dealing." *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420 (1997). This covenant

---

[1] The Restatement counsels, "When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court." Restatement (Second) of Contracts, § 204 (1981). But in New Jersey this principle does not apply where, as here, "both [parties] contend that, when they signed the agreement, there was a clear understanding between them regarding" the term. *Pacifico v. Pacifico*, 190 N.J. 258, 267 (2007).

[2] Aetna contends that the County (impermissibly) contradicts its own pleading by arguing that the rate charts are not part of the contracts between the parties. *See* ECF No. 21 (Aetna Sur-reply) at 1-3. Indeed, Aetna points to two statements in the Complaint—(1) that the County received the rate charts "as part of the 2009 proposal documents," Compl. ¶ 66; and (2) the County later "accepted Aetna's proposal," *id.* ¶ 13—as evidence that the County admitted that the rate charts are part of the parties' contract. Aetna Sur-reply at 1. The Court disagrees. Without the benefit of the full contract between the parties, the Court cannot say that the rate charts became part of the contract upon the County's acceptance of Aetna's "proposal." Put another way, alleging that the County eventually accepted Aetna's "proposal" does not necessarily mean that each and every "proposal document[]" became part of the final contract. The County is not required to "plead[] that [the 2010 rate chart] was *not* part of the parties' agreement." *Id.* at 2 (emphasis added). Nor does the County's decision to attach the rate charts to its Complaint admit—as Aetna argues, *id.*—that the charts formed part of the contract. "[D]raw[ing] all reasonable inferences in favor of the non-moving party," a reasonable jury could find that the rate charts were not part of the parties' contracts. *Zimmerman*, 873 F.3d at 418.

warrants "that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Roach v. BM Motoring, LLC*, 228 N.J. 163, 175 (2017) (internal quotation omitted). "[T]he breach of the implied covenant arises when the other party has *acted consistent with the contract's literal terms*, but has done so in such a manner so as to have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *MZL Capital Holdings, Inc. v. TD Bank, N.A.*, No. CV 14-5772 (RMB/AMD), 2016 WL 4163827, at *10 (D.N.J. Aug. 5, 2016) (quoting *Wade v. Kessler Inst.*, 172 N.J. 327, 345 (2002)) (emphasis in original), *aff'd*, 734 F. App'x 101 (3d Cir. 2018). The County complains that Aetna breached this covenant by charging higher rates for Medicare-eligible Gauer employees in non-Medicare plans while simultaneously receiving Medicare subsidies from the federal government. Compl. ¶¶ 98-106.

Aetna argues that this Count should be dismissed because the Complaint does not allege bad faith or malice, a required element of the County's claim, Aetna Mot. at 16-17; to which the County answers that it pled Aetna's bad faith by asserting that it agreed to charge a certain rate and then intentionally charged a higher one, County Mot. and Opp. at 21. Aetna also seeks dismissal on the grounds that this Count is duplicative of the County's breach of contract claim. Aetna Mot. at 16. The County says that it is allowed to plead in the alternative. County Mot. and Opp. at 20. But that accurate statement of law does not settle the matter. Indeed, as Aetna points out, when "a claim for breach of the implied covenant of good faith and fair dealing is premised upon the same conduct as a breach of contract claim, the claim must be dismissed as duplicative[.]" *MZL Capital Holdings*, 2016 WL 4163827, at *10.

The allegations underlying both claims here are nearly identical. Though dressed up differently, they amount to the same fact pattern. For Count 1, the County alleges that Aetna

breached by charging higher rates than the contracts specified. *See* Compl. ¶¶ 93-94. For Count 2, the County complains that Aetna breached by charging higher rates than the County's "commercial expectation." *See id.* ¶¶ 99-101. Yet as the County admits, this "commercial expectation" was really a "bargained for *contractual* expectation." *Id.* ¶ 104 (emphasis added). The County's breach of covenant claim boils down to an allegation that it expected Aetna to honor the terms of the contract, and Aetna did not. But New Jersey courts do not permit breach of implied covenant claims where, as here, the plaintiff's ultimate allegation is that the defendant breached terms that were "expressly set forth in [the contract] itself." *Wade*, 172 N.J. at 344; *see also CRA, Inc. v. Ozitus Int'l, Inc.*, No. CV 16-5632 (JBS/AMD), 2017 WL 2779749, at *7 (D.N.J. June 27, 2017) (even though plaintiffs may sometimes plead "alternative claims," breach of implied covenant claim is duplicative because plaintiff alleges "breach of the expressed provisions of the contract"); *Hahn v. OnBoard LLC*, No. CIV.209CV03639DRDMAS, 2009 WL 4508580, at *6 (D.N.J. Nov. 16, 2009) (breach of covenant claim dismissed as duplicative because "resolution of Plaintiff's claim is governed by the terms of an express contract"). The County's claim for breach of the implied covenant of good faith and fair dealing is dismissed.

    c. *Count 3: Reformation of Written Contract Due to Mutual Mistake*

The County also seeks judicial reformation of the parties' contracts during the Relevant Period on the grounds that "a mutual mistake made by [the] County and Aetna" caused the rate sheets to deviate from the parties' mutual understanding. Compl. ¶¶ 107-19. Reformation "is not intended to modify a contract, but recognizes that the scrivener failed to adequately reduce the parties' intentions to writing." *Lederman v. Prudential Life Ins. Co. of Am.*, 385 N.J. Super. 324, 345 (App. Div. 2006). To reform the contract on the basis of mutual mistake, the County

must prove by clear and convincing evidence that a mutual mistake occurred. *See Countryside Oil Co. v. Travelers Ins. Co.*, 928 F. Supp. 474, 485 (D.N.J. 1995).

Aetna argues that this claim should be dismissed because the County alleges "no facts that, if proven, would establish the parties ever contracted with the *mutual* understanding that premiums set forth in the rate sheets should be different for Medicare-eligible Gauer Retirees." Aetna Mot. at 19 (emphasis in original). The County responds that to the extent that the rate sheets do not "memorialize [the parties'] agreement they would need to be reformed to do so." County Mot. and Opp. at 23.

Aetna has the better of the argument. Under New Jersey law, "[a] party seeking reformation for mutual mistake must show that *both parties* labored under *the same* misapprehension as to a particular and essential fact." *Illinois Nat. Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 231-32 (3d Cir. 2011) (emphasis added). The County's Complaint does not allege that Aetna and the County were *both* wrong about a specific fact. Instead, the County states that it "understood" that the rate sheets "depicted lower, Medicare-subsidized premium rates for those Gauer retirees choosing to enroll in a program other than the Medicare Advantage Plan." Compl. ¶ 112. Nowhere does the County allege Aetna's similar belief. Without allegations that both Aetna and the County shared the same incorrect belief about the rate sheets, the County's contractual reformation claim fails.

### d. *Count 4: Promissory Estoppel*

Under New Jersey law, the elements of promissory estoppel are "(1) a clear and definite promise by the promisor; (2) the promise [was] made with the expectation that the promisee will rely thereon; (3) the promisee [did] in fact reasonably rely on the promise, and (4) detriment of a definite and substantial nature [was] incurred in reliance on the promise." *Pop's Cones, Inc. v.*

*Resorts Int'l Hotel, Inc.*, 307 N.J. Super. 461, 469 (App. Div. 1998). "Promissory estoppel is a quasi-contract theory and cannot be maintained where a valid contract fully defines the parties' respective rights and obligations." *Hillsborough Rare Coins, LLC v. ADT LLC*, No. CV 16-916 (MLC), 2017 WL 1731695, at *6 (D.N.J. May 2, 2017) (internal quotation omitted). The County contends that its promissory estoppel claim should proceed because the Federal Rules of Civil Procedure permit pleading in the alternative. *See* County Mot. and Opp. at 23. But as the *Hillsborough* court explained: "Because there is a valid contract here between [plaintiff] and [defendant], that contract must be enforced and [plaintiff] cannot proceed on alternate theories of quasi-contract. Although a party may plead in the alternative, *claims cannot proceed on quasi-contract theories absent a claim that the contract is invalid.*" 2017 WL 1731695, at *7 (emphasis added). So too here, where neither party disputes the validity of the contracts. *See* Compl. ¶¶ 6, 13, 80; Answ. ¶¶ 6, 13, 80. Count 4 is dismissed.

### 2. The County's Fraud Claims (Counts 5 through 7)

The County also brings three claims sounding in Fraud: Count 5, Negligent Misrepresentation; Count 6, Fraud/Fraud in the Inducement/Equitable Fraud; and Count 7, Fraudulent Concealment or Misrepresentation. Compl. ¶¶ 125-59.

To prevail on a claim of common law fraud (Count 6) in New Jersey, a plaintiff must prove: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172-73 (2005). The elements of a claim for fraudulent misrepresentation (Count 7) are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person

rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997). Aetna argues that these claims should be dismissed under Federal Rule of Civil Procedure 9(b). Aetna Mot. at 26-27. The Court agrees.

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The purpose of the heightened pleading standard is to require the plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico*, 507 F.3d at 200. "To satisfy this heightened standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.* Normally, "Rule 9(b) requires, at a minimum, that plaintiffs support their allegations . . . with all of the essential factual background that would accompany the first paragraph of any newspaper story – that is, the who, what, when, where and how of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 277 (3d Cir. 2006) (citations and quotation marks omitted). "Courts should, however, apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants." *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998) (citation omitted). Moreover, "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Counts 6 and 7 fail because the County fails to plead "the who, what, when, where and how of" Aetna's alleged material misrepresentations. *In re Suprema*, 438 F.3d at 277. The County alleges two material misrepresentations underpinning its common law fraud claim:

"Aetna represented to the County that the cost savings associated with Aetna's receipt of Medicare subsidies would be passed along to the County," Compl. ¶ 139; and "Aetna represented to the County through communications and contacts that the Gauer retirees in the traditional indemnity, PPO, POS and HMO plans would be charged at lower premium rates because of the existence of a Medicare subsidy," *id.* ¶ 140. For its fraudulent misrepresentation/concealment claim, the County relies on "Aetna's statements that it would charge the County for the Gauer retirees in accordance with the lower, Medicare-subsidized rates identified in the supplemental rate sheets." *Id.* ¶ 152.

These allegations fail to satisfy Rule 9(b). They do not "identify the speaker of [the] allegedly fraudulent statements." *Klein v. Gen. Nutrition Companies, Inc.*, 186 F.3d 338, 345 (3d Cir. 1999). Attributing the statements to Aetna is insufficient. *See id.* (Rule 9(b) is not satisfied because the "complaint fails to attribute the statement to any specific member of [defendant's] management."); *Trusted Transportation Sols., LLC v. Guarantee Ins. Co.*, No. CV 16-7094 (JBS/JS), 2018 WL 2926167, at *6 (D.N.J. June 11, 2018) ("Plaintiff does not identify who[ at defendant company] made the alleged misrepresentations or omissions to Plaintiff.") Nor does the County "specify the date of the alleged fraud." *Trusted Transportation Sols., LLC*, 2018 WL 2926167, at *6. While a plaintiff "need not always identify the particular time and place of the misrepresentation," the complaint must "contain[] some 'alternative means of injecting precision and some measure of substantiation into [the] allegations of fraud.'" *Peters v. Countrywide Home Loans, Inc.*, No. CV156329FLWLHG, 2016 WL 2869059, at *3 (D.N.J. May 17, 2016) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)). The County's Complaint lacks any such means precision or substantiation, alleging only that the misrepresentations took place "[t]hrough" and "in the course of the parties'

annual negotiations[.]" Compl. ¶¶ 130, 131. That pleading lacks any specificity as to where and when, each year during the Relevant Period, these negotiations took place. These allegations do not meet the "stringent pleading restrictions of Rule 9(b)." *Frederico*, 507 F.3d at 200.

Counts 5 also fails under Rule 9(b). Admittedly, Rule 9(b) does not always apply to negligent misrepresentation claims. *See, e.g., Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 604 n.12 (D.N.J. 2016) (declining to apply Rule 9(b) to negligent misrepresentation claim "premised on negligence").[3] But "[e]ven when 'fraud is not a necessary element of a claim . . . claims that do sound in fraud must be pled with particularity.'" *Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 86 n.3 (3d Cir. 2015) (quoting *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 717 (3d Cir. 1996)). The County's negligent misrepresentation claim sounds in fraud because it "references allegations of fraud and relies upon an allegedly false representation made by" Aetna. *Gray v. Bayer Corp.*, No. CIV.A. 08-4716JLL, 2009 WL 1617930, at *2 (D.N.J. June 9, 2009) (applying Rule 9(b) to negligent misrepresentation claim). Consequently, it must be pled with particularity. *See Travelers*, 620 F. App'x at 86 n.3 (applying Rule 9(b) to negligent misrepresentation claim).

The County's negligent misrepresentation claim does not meet this "stringent" standard. The claim is based on Aetna's undated, unsourced (and allegedly false) representation "that it would charge the County reduced rates for the Medicare-subsidized retirees, which included the Gauer retirees." Compl. ¶ 131. As with the common law fraud and fraudulent inducement claims, Count 5 fails to plead "the who, what, when, where and how of" Aetna's alleged misrepresentation. *In re Suprema*, 438 F.3d at 277.

---

[3] To state a claim for negligent misrepresentation, a plaintiff must plead "[a]n incorrect statement, negligently made and justifiably relied upon, [and] . . . economic loss or injury sustained as a consequence of that reliance." *Green v. Morgan Properties*, 215 N.J. 431, 457 (2013).

### 3. The County's Unjust Enrichment Claim (Count 8)

The County finally sues for unjust enrichment, Compl. ¶¶ 160-67, a quasi-contract theory of liability. *See Insulation Contracting & Supply v. Kravco, Inc.*, 209 N.J. Super. 367, 376 (App. Div. 1986). "To prove a claim for unjust enrichment, a party must demonstrate that the opposing party 'received a benefit and that retention of that benefit without payment would be unjust.'" *Thieme v. Aucoin-Thieme*, 227 N.J. 269, 288 (2016) (quoting *Iliadis v. Wal–Mart Stores, Inc.*, 191 N.J. 88, 110 (2007)). However, "[a] quasi-contract claim cannot exist when there is an enforceable agreement between parties." *Fischell v. Cordis Corp.*, No. 16-CV-00928 (PGS), 2016 WL 5402207, at *9 (D.N.J. Sept. 26, 2016) (quoting *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 733-34 (D.N.J. 2008)).

To resay, neither Aetna nor the County disputes the enforceability of the contracts entered into during the Relevant Period. *See* Compl. ¶¶ 6, 13, 80; Answ. ¶¶ 6, 13, 80. Indeed, both parties moved for judgment on the pleadings *to enforce the terms of those contracts*. That they disagree regarding the terms or scope of the contract is of no moment.

To be fair, "New Jersey courts regularly allow plaintiffs to proceed past a motion to dismiss by pleading a breach of contract claim and a quasi-contractual claim in the alternative, on the assumption that the plaintiffs' breach of contract claim may fail." *Motamed v. Chubb Corp.*, No. CV 15-7262, 2016 WL 1162853, at *6 (D.N.J. Mar. 24, 2016). But courts do so only where doubt remains regarding the *validity* of those contracts. *See Mendez v. Avis Budget Group, Inc.*, No. 11-cv-6537 (JLL), 2012 WL 1224708 *8 (D.N.J. Apr. 20, 2012) ("[A]t this stage of the pleadings, Plaintiff may plead alternative legal theories, but if the [contract] is found void . . . , Plaintiff may only proceed with his unjust enrichment claim. In the alternative, *if a valid written contract existed on the terms Plaintiff claims, then the existence of this contract*

*would prevent Plaintiff from recovering for quasi-contractual liability as asserted in an unjust enrichment claim.*" (emphasis added)). Because neither party disputes the validity of the contracts, the County's quasi-contract claim for unjust enrichment is dismissed.

### 4. Leave to Replead (Counts 2 through 8)

The Court will permit the County to seek leave to replead its contractual reformation (Count 3), negligent misrepresentation (Count 5), and fraud (Counts 6 and 7) claims. Leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). A general presumption exists in favor of allowing a party to amend its pleadings. *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir. 1984). Leave to amend a complaint should be granted freely in the absence of undue delay or bad faith on the part of the movant as long as the amendment would not be futile and the opposing party would not suffer undue prejudice. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Jang v. Boston Scientific Scimed, Inc.*, 729 F.3d 357, 367 (3d Cir. 2013) (citation omitted).

Aetna urges the Court to deny the County leave to replead because any amendment would be futile. Aetna Mot. at 29-30. "Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 243 (3d Cir. 2010) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). The Court disagrees that repleading the County's fraud and negligent misrepresentation claims would necessarily be futile. The Court dismissed Counts 5 through 7 because the County did not plead "the who, what, when, where and how of" the alleged misrepresentations underlying all three claims. *In re Suprema*, 438 F.3d at 277. Count 3 is similar: it failed because the County did not allege that Aetna and the County shared the same

incorrect belief about their contracts. Leave to seek to replead will allow the County opportunity to fill in these gaps.

The Court will deny leave to replead Counts 4 and 8: promissory estoppel and unjust enrichment, respectively. The Court dismissed each quasi-contractual Count on the grounds that a party may not bring a quasi-contract claim where, as here, a valid contract exists. Repleading cannot overcome this hurdle. The Court will likewise deny leave to replead Count 2 because it is duplicative of Count 1.

## CONCLUSION

Aetna's motion for judgment on the pleadings is granted in part and denied in part, and the County's motion for judgment on the pleadings is denied. An appropriate order follows.

DATE: 13 December 2018

William H. Walls
Senior United States District Court Judge